WILLIAM BRADY (WILLIAM F. LARKIN, EXECUTOR, SUBSTITUTED PLAINTIFF) *vs.* EMMA ANDERSON.

Third Judicial District, Bridgeport, October Term, 1929.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

Argued October 30th, 1929—decided January 6th, 1930.

*Harry C. V. Eagan,* for the appellant (defendant).

*Kenneth Wynne* and *Arthur T. Gorman,* with whom, on the brief, was *David J. McCoy,* for the appellee (plaintiff).

HAINES, J.  The record in this appeal shows that the plaintiff's decedent and the defendant had mutually agreed to be married at Christmas time, 1916.  At the time of that agreement, the decedent was the owner of a house and lot in Shelton, valued at $6,000, which was clear of all incumbrances except a mortgage for $1,000, and was occupied by a tenant.  The defendant, soon after the agreement of marriage was made, persuaded the decedent to make his home at the house in Derby where she lived and rented rooms to lodgers.  A short time later, she expressed a desire

to live in the decedent's house in Shelton, and the decedent caused the tenant to vacate and went with the defendant and her lodgers, to live in that house. Within a few days after moving into the house, the defendant expressed a fear that he might sell the house, and asked the decedent to give her a lease of it to insure her a right of occupation until the marriage was consummated. The decedent agreed to this, but before the lease was made, the defendant asked the decedent for a conveyance of the house to her by deed on the understanding and agreement that she would hold it until their marriage the following Christmas, and then reconvey it to him. The decedent agreed to this, and in October, 1916, conveyed the property to her on these terms, by warranty deed which was recorded on the Shelton land records. The decedent's motive in making the deed was to assure the defendant of his good faith in the promise of marriage and to allay her fear that he might otherwise dispose of the property. The sole consideration for the transfer was the promise of the defendant to marry the decedent and her agreement to reconvey the property to him upon the happening of that event. About Christmas, the defendant quarrelled with the decedent and unjustifiably refused to marry him or to reconvey the property to him. She has since married another man. After the quarrel, the decedent remained in the house until May, 1917, when he left because of her abuse and threats, and has not since occupied the house. The defendant has collected all the income from the property since the date of her deed, and this approximately equals the up-keep of the property. In May, 1917, the decedent brought an action against the defendant for breach of promise of marriage, asking $5,000 damages, but made no claim in that action for a reconveyance of the property. In November, 1921, while both these

actions were pending, the Superior Court referred the first action to a committee who reported that, after hearing the parties, he found "the issue in favor of the plaintiff and that he recover the sum of $100 nominal damages." The committee also stated in his report "that in determining the amount of damages I decline to consider the transaction between the parties with regard to certain real estate, holding that the rights of the parties to such transaction could be litigated only in the action now pending with regard thereto and not in this action." The report was accepted by the court and judgment was entered accordingly, in May, 1922. No appeal was taken by either party. The decedent died some time after this judgment was rendered and the present plaintiff was appointed executor in October, 1926, and was soon after substituted as plaintiff in the present action.

There is no dispute between the parties as to the foregoing facts. The defendant, as a special defense, pleaded that the judgment in the first action was *res adjudicata* in this action, but this was decided adversely by the trial court, and the defendant now presents the question to this court by this appeal. Though there are various assignments of error, they are all based upon this claim of *res adjudicata*.

The doctrine of *res adjudicata* is one of rest, and is enforced on the ground of public policy. Where there is an identity of actions between the same parties, or where the actions, though not identical, do raise identical issues, or where some issue is necessarily involved in both actions, and those issues are litigated before and finally determined by a court of competent jurisdiction, they become *res adjudicata* as to the parties and those who are in privity with them. *Ruocco* v. *Logiocco,* 104 Conn. 585, 592, 593, and cases cited, 134 Atl. 73. The reason for this long-established rule is,

that a right or exemption once given by a court of competent jurisdiction, should not again be litigated. "The policy of the law is . . . that if a claim has once been passed upon by a court of competent jurisdiction it shall not thereafter be controverted between the same parties, and this is in the interest of peace." *Supples* v. *Cannon,* 44 Conn. 424, 428; *Huntley* v. *Holt,* 59 Conn. 102, 108, 22 Atl. 34; *State* v. *Vandemark,* 77 Conn. 201, 203, 58 Atl. 715; *Sargent & Co.* v. *New Haven Steamboat Co.,* 65 Conn. 116, 31 Atl. 543; *Wildman* v. *Wildman,* 70 Conn. 700, 41 Atl. 1.

It clearly appears from the finding that the contract to marry the decedent, the defendant's breach of which was the sole ground of the first action, was complete many weeks before the decedent's deed and the defendant's agreement to convey, were made. The two contracts were separate and distinct, both in time and subject-matter. It is true that the second contract was made because of the existence of the prior one, and the time fixed by the second for performance by the defendant, was Christmas following the proposed marriage. The defendant having refused to marry the decedent, it was necessary for the plaintiff to prove that the defendant had breached both contracts, before he could recover in the present action. If the first contract had been carried out, an action like this for the reconveyance of the property, would have lain for a refusal to carry out the second contract. It thus appears there was here no identity of actions, and the only issue which is common to both actions, the only "identical issue," was the breach of the contract to marry. This issue, litigated and determined in the first action, thus became *res adjudicata.* "Where suits are not identical or not based upon the same cause of action, but some fact or issue is necessarily involved in both, or actually adjudicated in the former, then

the judgment in the first action is conclusive between such parties and privies as to that matter or fact." *Ruocco* v. *Logiocco, supra,* p. 592.

There remained the issue whether there had been a refusal to reconvey as agreed in the second contract, and this issue was not presented by the first action, nor tried nor decided, and the trier in that case explicitly said, "I decline to consider the transaction between the parties with regard to certain real estate." The issue is thus excluded by the very citation which defendant's counsel make from *Wildman* v. *Wildman,* 70 Conn. 700, 706, 41 Atl. 1: " 'It is an established rule in the administration of justice, that all controversies between parties, once litigated and fully and impartially determined, shall cease; and to that end no fact involved in such litigated controversy, shown by the record to have been material to its determination, and to have been put in issue and decided, whether the proceeding was at law or in equity, shall again be litigated between the parties.' "

"A matter not decided, and not necessarily determined by the judgment, is not concluded, although put in issue by the pleadings, especially where the matter pleaded was not actually litigated . . . made the subject of the trial, submitted to the jury, or pressed upon the consideration of the court. And for stronger reasons is this true where the judgment expressly reserves the question, or declares that it was not in issue." 34 Corpus Juris, p. 900, § 1336, p. 931, § 1337, p. 932, § 1338, p. 896, § 1304, p. 906, § 1317, and cases cited.

It is clear that in the first action, it was not the intention to recover this property or its value, as damages. Not only is that matter expressly reserved in the first action, but the value of the equity is shown as

$5,000, and the judgment was but $100 nominal damages.

If, in the first action, the plaintiff had sought to recover the value of this property, it would have been necessary for him to allege his loss of it as special damages, since it could not have been considered as a natural and necessary consequence of a breach of promise of marriage, recoverable on a general allegation of damage. 9 Corpus Juris, p. 346, § 50, and cases cited.

In other words, the loss of this property was not a damage to the plaintiff, naturally arising from a breach of the promise of marriage, and could not have been within the reasonable contemplation of the parties when the marriage contract was made, since the second contract did not then exist. *Lewis* v. *Hartford Dredging Co.,* 68 Conn. 221, 234-237, 35 Atl. 1127. Moreover, as the matter stood, since the title was held on condition, and that condition, so far as appears, was never waived, the property never became a proper element of damage for the breach of the prior contract. The assignments of error cannot be sustained.

There is no error.

In this opinion the other judges concurred.