ROBERT L. PICCININNI *v.* MARIE A. HAJUS

COTTER, C. J., LOISELLE, BOGDANSKI, PETERS and HEALEY, Js.

Argued January 17—decision released April 22, 1980

*Gordon R. Raynor,* for the appellant (plaintiff).
*Diane D. Ruben,* for the appellee (defendant).

BOGDANSKI, J. This appeal involves the sufficiency of the second count set forth in the plaintiff's complaint. In essence, it alleges that as the result of fraudulent representations made by the defendant to the plaintiff to the effect that she would marry him and that they would occupy, as their home, the house owned by the defendant, the plaintiff was induced to spend approximately $40,000 in renovating, improving and furnishing that house.

The defendant, asserting that the count was one not for fraud but for breach of promise to marry and, as such, was outlawed by § 52-572b of the General Statutes, moved to strike it. The trial court granted the motion to strike the challenged count.

The court concluded that General Statutes, § 52-572b, known as the "Heart Balm Act" (hereinafter the Act) bars the plaintiff's action. The Act, passed in 1967, which is before this court for the first time, provides that: "No action shall be brought upon any cause arising after October 1, 1967, from alienation of affections or from breach of a promise to marry."

An early discussion of the Heart Balm Acts pointed out that "courts cannot escape the burden of construing legislation as sweeping as this, so as to eliminate the evils aimed at without destroying rights not considered by the legislature, whose continued existence may be important to society and to individuals." See Feinsinger, "Legislative Attack on 'Heart Balm,'" 33 Mich. L. Rev. 979, 1000 (1935). See also *Morris* v. *MacNab*, 25 N.J. 271, 135 A.2d 657 (1957).

In *Mack* v. *White*, 97 Cal. App. 2d 497, 500–501, 218 P.2d 76 (1950), the plaintiff transferred property to the defendant upon his promise to marry her; he never intended to do so and the plaintiff sought return of the property. In awarding judgment to the plaintiff the court pointed out that the action was not one for breach of promise to marry but was "an action for obtaining money upon fraudulent representations" and was therefore not within the terms of the California Heart Balm Act. See also *Norman* v. *Burks*, 93 Cal. App. 2d 687, 209 P.2d 815 (1949).

The Supreme Court of Pennsylvania, in an opinion construing a similar statute, declared: "The act was passed to avert the perpetration of fraud by adventurers and adventuresses in the realm of heartland. To allow [the defendant] to retain the money and property which she got from [the plaintiff] by dangling before him the grapes of matrimony which she never intended to let him pluck would be to place a premium on trickery, cunning and duplicitous dealing. It would be to make a mockery of the law enacted by the legislature in that very field of happy and unhappy hunting.

"The Act of 1935 aimed at exaggerated and fictional claims of mortification and anguish purportedly attendant upon a breach of promise to marry. The legislation was made necessary because of the widespread abuse of the vehicle of a breach of promise suit to compel overly-apprehensive and naive defendants into making settlements in order to avoid the embarrassing and lurid notoriety which accompanied litigation of that character. The legislation was intended to ward off injustices and incongruities which often occurred when, by the mere filing of breach of promise suits innocent defendants became unregenerate scoundrels and tarnished plaintiffs became paragons of lofty sensibility and moral impeccability. It was not unusual in threatened breach of promise suits that the defendant preferred to buy his peace through a monetary settlement rather than be vindicated by a trial which might leave his good name in shreds." *Pavlicic* v. *Vogtsberger,* 390 Pa. 502, 508, 136 A.2d 127 (1957).

The predominant view is that Heart Balm statutes should be applied no further than to bar actions for damages suffered from loss of marriage, humiliation, and other direct consequences of the breach, and should not affect the rights and duties determinable by common law principles. *In Re Marriage of Heinzman,* 579 P.2d 638 (Colo. App. 1978), aff'd, 596 P.2d 61 (Colo. 1979); *Gill* v. *Shively,* 320 So. 2d 415 (Fla. App. 1975); *Norman* v. *Burks,* supra; *Beberman* v. *Segal,* 6 N.J. Super. 472, 69 A.2d 587 (1949); *Pavlicic* v. *Vogtsberger,* supra.

Furthermore, the majority rule appears to be that a gift made in contemplation of marriage is conditional upon a subsequent ceremonial marriage; *In Re Marriage of Heinzman,* 596 P.2d 61 (Colo.

1979); *DeCicco v. Barker,* 339 Mass. 457, 159 N.E.2d 534 (1959); *Semenza v. Alfano,* 443 Pa. 201, 279 A.2d 29 (1971); *Pavlicic v. Vogtsberger,* supra; *Guffin v. Kelly,* 191 Ga. 880, 14 S.E.2d 50 (1941); and that the existence of a Heart Balm Act does not affect common law principles governing a gift to a fiancee made on condition of marriage, which condition is broken by the donee. *In Re Marriage of Heinzman,* supra, 64; *Norman v. Burks,* supra; *Gill v. Shively,* supra; *Beberman v. Segal,* supra. See also annot., 24 A.L.R.2d 579, "Effect of Heart Balm Act," §§ 16–18.

In our view, the Act was designed to do away with excessive claims for damages, claims coercive by their very nature and, all too frequently, fraudulent in character; the purpose was to prevent the recovery of damages based upon contused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which the marriage offered.

The plaintiff here is not asking for damages because of a broken heart or a mortified spirit. He is asking for the return of things which he bestowed in reliance upon the defendant's fraudulent representations. The Act does not preclude an action for restitution of specific property or money transferred in reliance on various false and fraudulent representation, apart from any promise to marry, as to their intended use. A proceeding may still be maintained which although occasioned by a breach

of contract to marry, and in a sense based upon the breach, is not brought to recover for the breach itself. *DeCicco* v. *Barker*, supra.

Denial of recovery of property transferred in contemplation of marriage is not necessary to the accomplishment of the object of this legislation, and to so hold would have the undesirable effect of placing it within the power of a recipient to renounce a promise and yet retain property bestowed in anticipation of performance.

In sum, the gravamen of the second count is that the plaintiff was induced to transfer property to the defendant in reliance upon her fraudulent representations that she intended to marry him and that the property transferred would be used for their mutual benefit and enjoyment. The plaintiff does not here assert that the defendant wronged him in failing to marry him; rather, he is asserting that the defendant wronged him in fraudulently inducing him to transfer property to her. The plaintiff's complaint is based on what the defendant did, and not on what she refused to do. The court erred in granting the defendant's motion to strike.

There is error, the judgment is set aside and the case remanded with direction to overrule the motion to strike.

In this opinion LOISELLE and HEALEY, Js., concurred.

PETERS, J. (dissenting). The plaintiff brought an action against the defendant on three theories: breach of contract, fraudulent misrepresentation and unjust enrichment. The defendant's motion to strike was granted with respect to the second count

only, the count alleging fraudulent misrepresentation. I cannot agree with my brethren that the trial court was in error in granting this motion to strike.

The language of General Statutes § 52-572b, the "Heart Balm Act," does not, it is true, provide clear guidance about what forms of actions are brought within its prohibition of suits "from alienation of affections or from breach of a promise to marry." Nonetheless, I do not believe that the statute's purpose to ban vexatious litigation arising out of aborted plans to marry should be circumvented by a mere allegation that the defendant had no present intention that she (or he) would ever marry the plaintiff. It is entirely too easy to make such an allegation, and as Professor Clark points out, entirely too likely that triers of fact will fail to distinguish between breach of contract and intention not to perform a contract. Clark, The Law of Domestic Relations § 1.5, and esp. p. 17 (1968). In addition, I fear that a cause of action in deceit carries with it the capacity to generate claims for mental distress and punitive damages; see *Brower* v. *Perkins,* 135 Conn. 675, 680–81, 68 A.2d 146 (1949); that will only exacerbate the opportunity for blackmail that the Heart Balm Act was intended to prevent. For these reasons, recognizing the fact that the case law is divided, I would prefer to follow the cases such as *Thibault* v. *Lalumiere,* 318 Mass. 72, 75–76, 60 N.E.2d 349 (1945), that deny relief for suits based upon fraud. Clark, op. cit., p. 17.

Even if the second count of the plaintiff's complaint is struck, as I believe it should be, the plaintiff is far from remediless. Since the plaintiff would still be able to proceed in his count for unjust enrichment, the defendant will not be able to retain money

or property obtained through "trickery, cunning and duplicitous dealing," as the *Pavlicic* court feared. *Pavlicic* v. *Vogtsberger,* 390 Pa. 502, 508, 136 A.2d 127 (1957). The plaintiff is also entitled, regardless of our holding on count two, to recover property given on condition of marriage, just as any plaintiff could recover any other gift given on condition not fulfilled. That is the import of *Brady* v. *Anderson,* 110 Conn. 432, 438, 148 A. 365 (1930), and the holding of the majority of the American cases reported in Clark, The Law of Domestic Relations § 1.6 (1968), and annotation, "Rights in Respect of Engagement and Courtship Presents when Marriage Does not Ensue," 46 A.L.R.3d 578–611 (1972).

I would find no error.

In this opinion COTTER, C. J., concurred.