[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON DEFENDANTS' MOTION TO STRIKE FACTS
FACTS
On June 7, 1995, the plaintiff, Stanley P. Dufault ("Dufault"), filed a revised seven count complaint against the defendants, Toby Mastrocola ("Mastrocola") and Alan Schiffer ("Schiffer"). Counts One through Four, directed at Mastrocola, allege causes of action for negligence, intentional infliction of emotional distress, negligent CT Page 1773 infliction of emotional distress, and breach of fiduciary duty. Counts Five through Seven, directed at Schiffer, allege causes of action for breach of contractual obligation to a third-party beneficiary, breach of an implied contract, and negligence.
The plaintiff, an employee of the City of Hartford, alleges that on or about January 12, 1989, he sought counseling for alcohol abuse from Schiffer, director of Pathway Associates, who provided, pursuant so a contractual agreement with the City of Hartford, counseling services, including drug and alcohol counseling, to employees of the City of Hartford. Schiffer subsequently referred the plaintiff to Mastrocola. The plaintiff alleges that on January 19, 1989, he began treatment with Mastrocola, continuing through May, 1991, and that through treatment, he provided Mastrocola with "certain private and confidential information concerning his personal health and marital history." (Revised Complaint, Count One ¶ 8). The plaintiff alleges that as a result of Mastrocola's urging, he encouraged his wife, Marcy Dufault, to also begin counseling with Mastrocola, which she did on or about January, 1989, continuing until, at least, February, 1992. The plaintiff further alleges that Mastrocola used information obtained in the confidential counseling sessions to persuade the plaintiff's wife, Marcy Dufault, to engage in sexual relations with Mastrocola. The plaintiff alleges that as a result of Mastrocola's actions, he suffered severe anguish, mental distress, anxiety, anger, shame, and humiliation, forcing him to resign from political, community, and social organizations and seek further treatment for severe depression and suicidal tendencies.
On June 21, 1995, Schiffer filed a motion to strike Counts Five through Seven of the plaintiff's revised complaint on three separate grounds. First, Schiffer asserts that the torts of alienation of affections and criminal conversation have been abolished in Connecticut. Second, Schiffer asserts that the plaintiff fails to allege facts establishing a legally sufficient causal link between the plaintiff's injuries and Schiffer's act(s) Third, Schiffer contends that the plaintiff fails to allege sufficient facts to establish a cause of action as a third-party beneficiary enforcing a contractual obligation pursuant to the agreement between Schiffer and the City of Hartford. On the same date, in CT Page 1774 accordance with Practice Book § 155, Schiffer filed a memorandum in support of his motion to strike.
On September 25, 1995, Mastrocola filed a motion to strike Counts One through Four of the plaintiff's revised complaint on four separate grounds. First, Mastrocola contends that the torts of alienation of affections and criminal conversation have been abolished in Connecticut. Second, Mastrocola contends that he did not owe a duty of care to the plaintiff at the time of the alleged breach of duty. Third, Mastrocola asserts that the plaintiff fails to allege sufficient facts to establish a claim for breach of fiduciary duty. Fourth, Mastrocola asserts that the plaintiff's claims are barred by the applicable statute of limitations. In accordance with Practice Book § 155, on the same date, Mastrocola filed a memorandum in support of his motion to strike.
On September 27, 1995, the plaintiff filed a second revised complaint changing Count One ¶ 12(b) from "he used information about the Plaintiff's marital relationship and alcohol dependence in the pursuit of a sexual relationship with Plaintiff's wife, thereby breaching Plaintiff's confidences" to "he used information about the Plaintiff's marital relationship and alcohol dependence, which he obtainedwhile counseling the plaintiff, in his pursuit of a sexual relationship with Plaintiff's wife, thereby breaching Plaintiff's confidences." (Emphasis added.)
On October 10, 1995, the plaintiff filed an amended second revised complaint ("the complaint") changing Count Five ¶ 12, in relevant part, from "At all times mentioned herein, the Plaintiff, Toby Mastrocola . . ." to "At all times mentioned herein, the Plaintiff, Stanley Dufault . . ." (Emphasis added.)
On October 30, 1995, the plaintiff filed memorandum of law in opposition to Schiffer and Mastrocola's motions to strike. On October 30, 1995, Mastrocola filed an amended motion to strike adding a fifth ground. Listed as the fourth ground, Mastrocola moves to strike Count Two on the ground that the plaintiff fails to allege sufficient facts to support a cause of action for recklessness. On the same date, Mastrocola filed a reply memorandum in support of his motion to strike. On November 2, 1995, the plaintiff filed a CT Page 1775 memorandum in response to Mastrocola's reply. On November 7, Schiffer filed a reply memorandum in support of his motion to strike.
STANDARD
The purpose of a motion to strike "is to test the legal sufficiency of a pleading." RK Constructors, Inc. v. FuscoCorp. , 231 Conn. 381, 384, 650 A.2d 153 (1994). For example, the motion to strike "contest[s] the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." Novametrix Medical Systems, Inc. v.BOC Group Inc., 224 Conn. 210, 214-15, 618 A.2d 25 (1992). See also Practice Book § 152.
The motion to strike "admits all facts well pleaded." RKConstructors, Inc. v. Fusco Corp. , 231 Conn. 381, 383 n. 2,650 A.2d 153 (1994). The motion to strike "does not admit legal conclusions or the truth or accuracy of opinions stated in the pleadings." Yale University v. Wurtzel, 3 Conn. L. Rptr. 520, 521 (April 9, 1991, Mihalakos, J.). Therefore, the court "cannot look beyond the complaint for facts not alleged."Robert S. Weiss Associates, Inc. v. Wiederlight, 208 Conn. 525,537, 546 A.2d 216 (1988).
A. Alienation of Affections and Criminal Conversation
Mastrocola, in his memorandum in support of his motion to strike Counts One through Four of the plaintiff's complaint, and Schiffer, in his memorandum in support of his motion to strike Counts Five through Seven of the plaintiff's complaint, argue that the basis for the plaintiff's allegations, that Mastrocola engaged in sexual relations with the plaintiff's wife, as well as the damages allegedly suffered by the plaintiff, indicate claims for alienation of affections and criminal conversation. Mastrocola and Schiffer further argue that because Connecticut, pursuant to General Statutes §§ 52-572b
and 52-572f, has abolished claims for alienation of affections and criminal conversation, Counts One through Seven of the plaintiff's complaint should be stricken as legally insufficient.
In opposition, the plaintiff argues that he is not alleging claims for alienation of affections and criminal conversation. Rather, the plaintiff argues that he has CT Page 1776 properly pleaded recognized common law causes of action.
General Statutes § 52-572b states that "[n]o action may be brought upon any cause arising from alienation of affections or from breach of a promise to marry." General Statutes § 52-572f states that "[n]o action may be brought upon any cause arising from criminal conversation."
In Piccininni v. Hajus, 180 Conn. 369, 373, 429 A.2d 886
(1980), the Connecticut Supreme Court analyzed General Statutes § 52-572b, the "Heart Balm Act," concluding that "the Act was designed to do away with excessive claims for damages, claims coercive by their very nature and, all too frequently, fraudulent in character; the purpose was to prevent the recovery of damages based upon contused [confused] feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunities to marry and for the loss of the pecuniary and social advantages which marriage offered." Nevertheless, the Connecticut Supreme Court recognized that "[t]he predominant view is that Heart Balm statutes should be applied no further than to bar actions for damages suffered from loss of marriage, humiliation, and other direct consequences of the breach, and should not affect the rights and duties determinable by common law principles." Id., 372.
Count One, ¶ 12 of the plaintiff's complaint states, in relevant part, that "[t]he defendant, Toby Mastrocola, wasnegligent and careless . . ." (Emphasis added). Count Two, ¶ 12 states that "[t]he Defendant, Toby Mastrocola, by hisextreme and outrageous conduct, recklessly and intentionallycaused severe emotional distress and harm to the Plaintiff, Stanley P. Dufault." (Emphasis added.) Count Three, ¶ 12 states that "[t]he defendant, Toby Mastrocola knew or shouldhave known that his conduct involved an unreasonable risk ofcausing emotional distress which might result in illness orbodily harm to the Plaintiff." (Emphasis added.) Count Four, ¶ 12 states, in relevant part, that "[t]he Defendant, Toby Mastrocola, as a professional therapist, held a fiduciary dutyto his patient, the Plaintiff, Stanley P. Dufault . . ." (Emphasis added.) Count Five, ¶ 13 provides, in relevant part, that "[t]he Defendant, Alan Schiffer, d/b/a Pathways Associates, breached his contract with the City of Hartford, CT Page 1777 to provide competent and qualified therapists and counsellors under the employee assistance program for city employees . . ." Count Five, ¶ 14 states that "[t]he Plaintiff became a third party beneficiary of this contract when he sought assistance from Pathways Associates and was then [sic] referred by Pathways to the Defendant, Toby Mastrocola." (Emphasis added.) Count Six, ¶ 12 states, in relevant part that "[t]he Plaintiff, Stanley P. Dufault, entered into animplied contract with Alan Schiffer . . ." (Emphasis added.) Count Six, ¶ 13 states, in relevant part, that "[t]he Defendant, Alan Schiffer, PhD, acting in his capacity on behalf of Pathways, breached his duty to the Plaintiff . . ." Count Seven, ¶ 12 states, in relevant part, that "[t]he Defendant, Alan Schiffer, PhD, d/b/a Pathways Associates, isnegligent in one or more of the following ways[.]" (Emphasis added.)
Based on the language noted above, the plaintiff is alleging common law causes of action for negligence, intentional infliction of emotional distress, negligent infliction of emotional distress, breach of fiduciary duty, breach of a contractual obligation to a third-party beneficiary, and breach of an implied contract. Accordingly, the court finds that Mastrocola's motion to strike Counts One through Four of the plaintiff's complaint and Schiffer's motion to strike Counts Five through Seven of the plaintiff's complaint, on the ground that the torts of alienation of affections and criminal conversation have been abolished in Connecticut, are denied.
B. Mastrocola's duty to the plaintiff
In his memorandum in support of his motion to strike Counts One through Three of the plaintiff's complaint, on the ground that he did not owe a duty to the plaintiff at the time of the alleged breach of duty, Mastrocola contends that he owed no duty to the plaintiff not to engage in sexual relations with his wife. Rather, Mastrocola argues that his professional standard of care was triggered only during counseling sessions. In opposition, the plaintiff focuses on the test to determine whether there is a duty of care, specifically, the foreseeability that harm will occur to the plaintiff from the defendant's act or failure to act. The plaintiff argues that in applying this test to the present situation, a person in Mastrocola's position, a therapist, who CT Page 1778 is seen by his patients as someone they can confide in and trust, should anticipate that harm would result from using confidential information in the pursuit of sexual relations with the plaintiff's wife.
"In order to recover in a tort case, the plaintiff must show that the defendant has breached a legal duty owed to him." Sheiman v. Lafayette Bank Trust Co., 4 Conn. App. 39,44, 492 A.2d 219 (1985). "A duty to use care may arise from a contract, from a Statute, or from circumstances under which a reasonable person, knowing what he knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result from his act or failure to act." Coburn v. Lenox Homes, Inc., 186 Conn. 370, 375,441 A.2d 620 (1982).
In the court's opinion a reasonable therapist, simultaneously treating a husband and wife, should anticipate that the plaintiff would suffer harm from the therapist breaching the plaintiff's trust by using confidential information to encourage the plaintiff's wife to engage in sexual relations with him. This conclusion is supported byFigueiredo-Torres v. Nickel, 321 Md. 642, 584 A.2d 69 (Md. 1991), where the plaintiff alleged that the defendant, a psychologist, while treating the plaintiff and his wife for marital problems, engaged in sexual relations with the plaintiff's wife. In responding to the defendant's argument that the affair was separate from his professional practice, the Maryland Court of Appeals held that "[t]he trier of fact may find it was professional malpractice for a psychologist engaged in marriage counseling to maintain a sexual relationship with his patient's spouse. . . . We doubt that the standard of care exercised by a reasonable psychologist permits the practitioner to treat a patient in the confines of the office and then undermine that treatment outside the therapy session." (Citation omitted.) Id., 650. Factually, the court noted that "[o]n the surface, the allegations of improper sexual conduct set forth in [the plaintiff's] complaint may constitute criminal conversation; however, if in addition, the sexual activity violated the professional standard of care which [the defendant] owed to [the plaintiff], it is sufficient to support a cause of action for professional negligence." Id., 651. In conclusion, the court found that the plaintiff's "complaint raises an additional means, separate from the allegations which overlap amatory CT Page 1779 claims, by which [the defendant] may have breached the standard of care owed to his patient. [The plaintiff] maintains that [the defendant] demoralized him and engaged in conduct destructive to his ego development and self-respect in violation of the duty [the defendant] owed to his psychotherapy patient." Id. See also Scamardo v. Dunaway,650 So.2d 417 (La.Ct.App. 1995). Accordingly Mastrocola's Motion to Strike Counts One through Three on the ground he did not owe a duty to the plaintiff is denied.
C. Fiduciary Duty
In his memorandum in support of his motion to strike, Mastrocola argues that Count Four of the plaintiff's complaint should be stricken on the ground that a therapist does not owe a fiduciary duty to his patient(s). In opposition, the plaintiff argues that fiduciaries exist in a variety of forms and are not precisely defined. The plaintiff argues that a fiduciary relationship is defined by a confidential and trusting relationship. The plaintiff further argues that the determination of whether a fiduciary relationship exists is a question of fact.
"A fiduciary or confidential relationship is characterized by a unique degree of trust and confidence between the parties, one of whom has superior knowledge, skill or expertise is under a duty to represent the interests of the other." Dunham v. Dunham, 204 Conn. 303, 322, 528 A.2d 1123
(1987). "The determination of whether such a fiduciary relationship exists is one of fact, and therefore, is not appropriately determined on a motion to strike." Starratt v.Spencer, No. 94-0140926S, 1995 WL 749549 (Conn.Super.Ct. November 27, 1995). Accordingly, the court holds that Mastrocola's motion to strike Count Four of the plaintiff's complaint, on the ground that the plaintiff fails to state a claim for breach of fiduciary duty, is denied.
D. Recklessness
In his memorandum in support of his motion to strike Count Two of the plaintiff's complaint, Mastrocola argues that by basing the recklessness claim on the same set of facts supporting the negligence claim, the plaintiff fails to allege sufficient facts indicating that the defendant acted recklessly. In opposition, the plaintiff argues that CT Page 1780 recklessness, as part of a claim for intentional infliction of emotional distress, may be inferred from Mastrocola's conduct. The plaintiff further argues that he has sufficiently alleged facts supporting a claim for intentional conduct.
In Count Two, ¶ 12, the plaintiff alleges that "[t]he Defendant, Toby Mastrocola, by his extreme and outrageous conduct, recklessly and intentionally caused severe emotional distress and harm to the plaintiff, Stanley P. Dufault." The elements of intentional infliction of emotional distress are "(1) that the actor intended to inflict emotional distress; or that he knew or should have known that emotional distress was a likely result of his conduct; (2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the cause of the plaintiff's distress; and (4) that the emotional distress sustained by the plaintiff was severe."Petyan v. Ellis, 200 Conn. 243, 253, 510 A.2d 1337 (1986). Because "reckless conduct tends to take on the aspect of highly unreasonable conduct, involving an extreme departure from ordinary care, in a situation where a high degree of danger is apparent[,]" the plaintiff is using the word "recklessly" to describe Mastrocola's conduct, not to identify the cause of action. (Internal quotation marks omitted).Dubay v. Irish, 207 Conn. 518, 533, 542 A.2d 711 (1988). Therefore, based on the language in Count Two, the plaintiff is alleging a cause of action for intentional infliction of emotional distress, not a common law cause of action for recklessness. Accordingly, the court holds that Mastrocola's motion to strike Count Two of the plaintiff's complaint, on the ground that the plaintiff fails to state sufficient facts to support a claim for recklessness, is denied.
E. Statute of Limitations
In his memorandum in support of his motion to strike Counts One through Four of the plaintiff's complaint on the ground that these claims are barred by the applicable statute of limitations, Mastrocola contends that the allegations set forth in Counts One and Three are governed by General Statutes § 52-584[1] and that the allegations set forth in Counts Two and Four are governed by General Statutes § 52-577.[2] Mastrocola argues that because the plaintiff ended therapy in May, 1991 and did not initiate the action until November, 1994, the applicable three year statute of limitations bars Counts One through Four of the plaintiff's complaint. Mastrocola further CT Page 1781 argues that because the plaintiff's wife is not a party to this action, the date she terminated her therapy is not relevant to the issue of whether the applicable statute of limitations bars the plaintiff's claim(s). In addition, Mastrocola contends that all relevant information regarding the applicable statute of limitations is present in the complaint.
In opposition, the plaintiff argues that Mastrocola's duty to the plaintiff did not terminate with his therapy in May, 1991. The plaintiff further argues that he is entitled to submit evidence with respect to the date(s) on which he became aware of the fact that Mastrocola was engaging in sexual relations with his wife, as well as whether Mastrocola engaged in a continuing course of conduct, which may toll the statute of limitations. The plaintiff further argues that, in any case, a claim that an action is barred by the applicable statute of limitations must generally be raised by a special defense, rather than a motion to strike.
"A claim that an action is barred by the lapse of the statute of limitations must be pleaded as a special defense, not raised by a motion to strike. Practice Book 164 . . . The `advantage of the statute of limitations cannot be taken by [a motion to strike]. . . . [T]he objection to this mode of pleading is that it raises no issue' and `deprives the plaintiff of an opportunity to reply to a new promise, or an acknowledgement.' . . . A motion to strike might also deprive a plaintiff of an opportunity to plead matters in avoidance of the statute of limitations defense. . . . In two limited situations, however, we will allow the use of a motion to strike to raise the defense of the statute of limitations The first is when `[t]he parties agree that the complaint sets forth all the facts pertinent to the question whether the action is barred by the Statute of Limitations and that, therefore, it is proper to raise that question by [a motion to strike] instead of by answer.' . . . The second is where `a statute gives a right of action which did not exist at common law, and fixes the time within which the right must be enforced, the time fixed is a limitation or condition attached to the right — it is a limitation of the liability itself as created, and not of the remedy alone.'" (Citations omitted.)Forbes v. Ballaro, 31 Conn. App. 235, 239-40, 624 A.2d 389
(1993). CT Page 1782
Because the plaintiff argues that the complaint does not allege all relevant facts necessary to determine whether his claims are barred by the applicable statute of limitations, the first exception does not apply in the present case. Further, because Counts One through Four allege common law causes of action, the second exception also does not apply in the present case. Mastrocola's statute of limitations defense should have been raised as a special defense rather than a motion to strike. Accordingly, Mastrocola's motion to strike Counts One through Four of the plaintiff's complaint, on the ground that the plaintiff's claims are barred by the applicable statute of limitations, is denied.
F. Proximate Cause
In his memorandum in support of his motion to strike Counts Five through Seven of the plaintiff's complaint on the ground that the plaintiff fails to establish proximate cause between the plaintiff's alleged injuries and Schiffer's alleged breaches of contract and breach of duty, Schiffer contends that the plaintiff's allegations lack sufficient facts linking the defendant, Alan Schiffer's, actions to the plaintiff's injuries. In opposition, the plaintiff contends that the allegations in Counts Five through Seven do establish actual and proximate cause. The plaintiff further argues that the issue of proximate cause is a question of fact which cannot properly be raised by a motion to strike.
The Connecticut Supreme Court has defined proximate cause as "[a]n actual cause that is a substantial factor in the resulting harm." (Internal quotation marks omitted.) Doe v.Manheimer, 212 Conn. 748, 757, 563 A.2d 699 (1989). "Conclusions of proximate cause are to be drawn by the jury and not by the court." . . . `It becomes a conclusion of law only when the mind of a fair and reasonable man could reach only one conclusion.'" (Internal quotation marks omitted.) Id. Therefore, "[t]he question [of proximate cause] should be submitted to the trier of fact if there is room for reasonable disagreement." Coste v. Riverside Motors Inc., 24 Conn. App. 109,114, 585 A.2d 1263 (1991). See also Henderson v. Dolan, Superior Court, Judicial District of New Haven, Docket No. 0361450 (February 17, 1995, Hodgson, J.,13 Conn. L. Rptr. 504, 505) (in discussing the Connecticut Supreme Court's analysis of the issue of proximate cause in a medical malpractice case, Wasfi v. Chadha, 218 Conn. 200, 588 A.2d 204
CT Page 1783 (1991), where a defendant claimed that any negligence on his part was superseded by the subsequent negligence of a second doctor, the Superior Court stated that "[t]he Supreme Court did not regard the issue of proximate cause as to the first doctor as a matter of law but as a factual determination to be decided by the jury.") Accordingly, Schiffer's motion to strike Counts Five through Seven, on the ground that the plaintiff fails to sufficiently allege proximate cause, is denied.
G. Third-Party Beneficiary
In his memorandum in support of his motion to strike Count Five of the plaintiff's complaint, Schiffer argues that the plaintiff fails to allege a legally sufficient claim as a third-party beneficiary to the contract between Schiffer and the City of Hartford. In opposition, the plaintiff states that the test to determine whether a party may enforce a contract as a third-party beneficiary is whether the parties intended that the promisor assume a direct obligation to the third-party beneficiary. The plaintiff contends that under this test, Count Five sufficiently alleges that the plaintiff was a third-party beneficiary of the contract.
"A third-party seeking to enforce contractual rights must allege facts sufficient to show that the contracting parties intended that the promisor should assume a direct obligation to the third-party." Deluca v. Thurston, Superior Court, Judicial District of Waterbury, Docket No. 124574 (July 7, 1995, McDonald, J., 14 Conn. L. Rptr. 540, 540) "`[T]he ultimate test to be applied [in determining whether a person has a right of action as a third party beneficiary] is whether the intent of the parties to the contract was that the promisor should assume a direct obligation to the third party [beneficiary].'" Knapp v. New Haven Road Construction Co.,150 Conn. 321, 325, 189 A.2d 386 (1963).
In Deluca v. Thurston, supra, 14 Conn. L. Rptr. 540, the plaintiff sought recovery for injuries allegedly suffered when she slipped and fell on water in front of an elevator located in an apartment building. The plaintiff attempted to enforce a contractual obligation as a third-party beneficiary to a contract between American Linen Supply ("Supply"), and the owner of the building, William Thurston, requiring Supply to place absorbent floor mats in the area where the plaintiff CT Page 1784 slipped and fell. The court found that "the complaint contains sufficient allegations which, when favorably construed, show that the contracting parties intended that the promisor Supply should assume a direct obligation to the third-party, the plaintiff, an invitee of Thurston." Id.
In contrast, in Dimaggio v. Makover, 13 Conn. App. 321, the plaintiff underwent a psychological evaluation by a physician, in a contractual relationship with her employer, to determine her fitness for work. Pursuant to this examination, the plaintiff was terminated. The plaintiff sought recovery, based on the allegation that the physician failed to perform his job competently, as a third-party beneficiary of the contract between her employer and the physician. The Court of Appeals concluded that "[t]he plaintiff's complaint, however, sounds in malpractice. `Malpractice is commonly defined as the failure of one rendering professional services to exercise that degree of skill and learning commonly applied under all the circumstances in the community by the average prudent reputable member of the profession with the result of injury, loss, or damage to the recipient of those services. . . . A fair reading of the complaint reveals that the gravamen of the suit was the alleged failure by the defendant to exercise the requisite standard of care.'" (Citations omitted; internal quotation marks omitted.) Id., 322-23.
Similarly, in Cowan v. Warner-Lambert Co., No. 90-032564S, 1993 WL 298885 (Conn.Super.Ct. July 28, 1993), the plaintiff was terminated subsequent to a examination by a physician in a contractual relationship with her employer. InCowan v. Warner-Lambert Co., id., the plaintiff also alleged that the physician departed from the requisite standard of medical care. Based on allegations of this nature, the plaintiff sought recovery as a third-party beneficiary Similar to Dimaggio v Makover, supra, 13 Conn. App. 321, the superior court in Cowan v. Warner-Lambert Co., supra, concluded that "a fair reading of plaintiff's complaint reveals that the gravamen of the claim is the alleged failure of [the defendant] to exercise the requisite standard of care in performing an examination on her."
Count Five, ¶ 12 of the plaintiff's complaint states that "[a]t all times mentioned herein, the Plaintiff, Stanley DuFault, was an employee of The City of Hartford, and was eligible to avail himself of service provided to City CT Page 1785 employees under an agreement between Pathways Associates and The City of Hartford." Count Five, ¶ 13 states that "[t]he Defendant, Alan Schiffer, d/b/a Pathways Associates, breached his contract with the City of Hartford, to provide competent and qualified therapists and counsellors under the employee assistance program for city employees when he knew or should have known that the Defendant, Toby Mastrocola, was not competent and qualified to treat the Plaintiff in a good and professional manner."
In the court's opinion Count Five of the plaintiff's complaint purports to state a claim for negligence in the guise of a claim as a third-party beneficiary seeking to enforce a contractual obligation. Accordingly, Schiffer's motion to strike Count Five, on the ground that the plaintiff fails to allege sufficient facts to support a claim as a third-party beneficiary of the contract between Schiffer and the City of Hartford, is granted.
Hale, Judge Referee