[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION TO STRIKE
This action arises out of the nearly thirty-year cohabitation between the plaintiff, Josephine Dore, and the defendant's decedent, Julius Verbanic,[1] and an alleged oral agreement to convey full interest in the real property known as 186 Bouton Street, Norwalk, Connecticut, as well as other estate property based on that relationship. Julius Verbanic died on May 13, 1999. The plaintiff and defendant's decedent never married. However, the plaintiff avows that there was an enduring understanding and agreement that the decedent would take care of her as if she were his wife, especially when it came to the disposition of his property at death. The defendant administrator denied, by letter, the plaintiffs claims against the estate on October 28, 1999. Similarly, the Probate Court, DePanfilis, J., refused to hold a hearing, rejecting the plaintiffs claims on February 10, 2000. Thereafter, the plalntiff filed this action on February 29, 2000 in the Superior Court. The plaintiffs complaint primarily consists of actions for detrimental reliance, breach of contract and unjust enrichment. Those theories are factually based on the following allegations. The plaintiff professes that over the course of the years of co-habiting and carrying on a relationship with the CT Page 12440 defendant's decedent, she performed as a housekeeper, gardener, cook, companion, servant, driver, painter, maintenance person, and especially in the decedent's last ten years when he was stricken ill, as a nurses aide. In addition, the plaintiff divulges that she made personal expenditures, aside from her services, to which she expected to be compensated. She expected such compensation as a result of promises supposedly made by the defendant's decedent that he would leave the plaintiff: (1) the property and house at 186 Bouton Street, Norwalk, Connecticut; (2) one-half of all his property — real and personal — which he possessed at the time of his death; (3) provisions for her after his death so she would be able to remain in the house as she had during their relationship; and (4) treat the plaintiff as if she were his wife with respect to the disposition of his property after his death. The defendant filed this motion to strike, seeking to attack all four counts of the complaint as well as the first prayer for relief
"Practice Book . . . § 10-39, allows for a claim for relief to be stricken only if the relief sought could not be legally awarded." PamelaB. v. Ment, 244 Conn. 296, 325, 709 A.2d 1089 (1998). "The purpose of a motion to strike is to contest, the legal sufficiency of the allegations of any complaint . . . to state a claim upon which relief can be granted." (Internal quotation marks omitted.) Peter-Michael. Inc. v. SeaShell Associates, 244 Conn. 269, 270, 709 A.2d 558 (1998). In ruling on a motion to strike, the role of the trial court is "to examine the [complaint], construed in favor of the plaintiffs, to determine whether the plaintiffs have stated a legally sufficient cause of action."Napoletano v. Cigna Healthcare of Connecticut. Inc., 238 Conn. 216,232-33, 680 A.2d 127 (1996). Yet, "the court is limited to the facts alleged in the complaint." (Internal quotation marks omitted.) Waters v.Autuori, 236 Conn. 820, 825, 676 A.2d 357 (1996). "[I]f facts provable in the complaint would support a cause of action, the motion to strike must be denied." (Citation omitted.) Pamela B. v. Ment, supra, 244 Conn. 308.
The defrndant administrator argues that all four counts are legally insufficient because of the Connecticut Heart Balm Act, General Statutes § 52-572b.[2] Initially, the court notes that this case does not involve, whatsoever, the alienation of affections, and, therefore, any propositions that the defendant uses from such cases as an analogy, are unpersuasive. The narrow issue in this case is whether the plaintiffs claims fall within a "cause arising from . . . breach of a promise to marry," as stated and prohibited by § 52-572b. After consulting the cases which have interpreted § 52-572b, this court finds that the plaintiffs claims are not barred by the Heart Balm statute. In Piccininniv. Hajus, 180 Conn. 369, 372, 429 A.2d 886 (1980), the court declared: "The predominant view is that the Heart Balm statute should be applied no further than to bar actions for damages suffered from loss of marriage, CT Page 12441 humiliation, and other direct consequences of the breach, and should notaffect the rights and duties determinable by common law principles." (Emphasis added.) "In our view, the Act was designed to do away with excessive claims for damages, claims coercive by their very nature and, all too frequently, fraudulent in character; the purpose was to prevent the recovery of damages based upon contused feelings, sentimental bruises, blighted affections, wounded pride, mental anguish and social humiliation; for impairment of health, for expenditures made in anticipation of the wedding, for the deprivation of other opportunitiesto marry and for the loss of the pecuniary and social advantages whichthe marriage offered. (Emphasis added.) Id., 373.
In Boland v. Catalano, 202 Conn. 333, 339, 521 A.2d 142 (1987), the court pronounced: "The rights and obligations that attend a valid marriage simply do not arise where the parties choose to cohabit outside the marital relationship. . . . Ordinary contract principles are not suspended, however, for unmarried persons living together, whether or not they engage in sexual activity." (Citation omitted.) "There is no longer, therefore, any basis . . . for failing to recognize that contractual rights may develop in the course of a cohabitation that includes a sexual relationship just as they may arise between parties inhabiting the same household without any such relationship." Id., 340. "[T]he courts should enforce express contracts between nonmarital partners except to the extent that the contract is explicitly founded on the consideration of meretricious sexual services. . . . In the absence of an express contract, the courts should inquire into the conduct of the parties to determine whether that conduct demonstrates an implied contract, agreement of partnership or joint venture, or some other tacit understanding between the parties. The courts may also employ the doctrine of quantum meruit, or equitable remedies such as constructive or resulting trusts, when warranted by the facts of the case." (Citing the revolutionary case of Marvin v. Marvin, 18 Cal.3d 660, 683, 557 P.2d 106,134 Cal.Rptr. 815 (1976)) Id., 340-41.
Today, both Piccininni and Boland remain the law and policy of Connecticut. In Mancini v. Wyzik, Superior Court, judicial district of Hartford/New Britain at Hartford, Docket No. 520862 (April 13, 1994,Allen, S.T.R.), the court, citing both Piccininni and Boland, stated: "Although it would appear that certain portions of the complaint allege a breach of promise to marry, other portions of the complaint appear to allege a breach of contract wherein defendant's promises caused the plaintiff to sell her own home and to expend substantial funds to complete renovations in a home purchased by the defendant." The enforcement of agreements between unmarried cohabiting couples continues to be recognized. See, e.g., Burns v. Koellmer, 11 Conn. App. 375, 527 A.2d 1210
(1987); Vibert v. Atchley, Superior Court, judicial district of New Haven CT Page 12442 at New Haven, Docket No. 346622 (May 23, 1996, Burns, J.) (16 Conn.L.Rptr. 604); Fluery v. Gale, Superior Court, judicial district of Tolland at Rockville, Docket No. 52293 (April 15, 1993, Shaughnessy,J.); Lovallo v. Guerrera, Superior Court, judicial district of Waterbury, Docket No. 093735 (April 11, 1991, McWeeny, J.) (6 C.S.C.R. 459). The defendant cites and relies heavily on Weathers v. Maslar,
Superior Court, judicial district of Middlesex at Middletown, Docket No. 088674 (January 31, 2000, Arena, J). However, the decision is readily distinguishable for in Weathers, unlike the present scenario concerning the plaintiffs allegations, there was a precise promise to marry, the breach of which is not actionable. Likewise, cases such as Wilson v.Overton, Superior Court, judicial district of Litchfield, Docket No. 050429 (December 11, 1991, Pickett, J.) (7 C.S.C.R. 69) and Moltakau v.Torre, Superior Court, judicial district of Fairfield at Bridgeport, Docket No. 251846 (August 22, 1990, Herman, S.T.R.) are inapplicable because they pass well beyond the pleadings stage of a motion to strike in that those plaintiffs failed to prove their claims because of a lackof evidence at trial. Moreover, Connecticut has long held that oral agreements to pay for services by will are valid and may be enforced against the estate of an intestate promisor. See Ubysz v. DePietro,185 Conn. 47, 440 A.2d 830 (1981).
Applying the discussion above to the present case, the plaintiff has stated a legally sufficient cause of action in her four count complaint upon which relief may be granted pending evidence adduced at trial. The plaintiff does not plead alienation of affections nor does she allege breach of a promise to marry. See General Statutes § 52-572b. Furthermore, no where in the plaintiffs allegations is there an averment of common law marriage. Indeed, the tenor of the entire complaint, because the plaintiffs second, third, and fourth count are incorporating the first count by reference, concerns a promise or set of promises made by the defendant's decedent to give the plaintiff certain property based on her rendered services. This court observes that there is a vital difference between alleging breach of a promise to marry and asserting breach of an agreement between unmarried cohabiting persons based on thirty years of service, including reliance on that basis. See Boland v.Catalano, supra, 202 Conn. 333. The plaintiff alleges that one of the promises of the defendant's decedent is that he would treat her as a wife with respect to the disposition of his property at death. Read in favor of the plaintiff under motion to strike law, that is still not an allegation of a promise to marry and the breach thereof. The plaintiffs complaint does not sound of a broken heart; it sounds of expected compensation for services rendered. Her causes of action are based on the common law. See Piccininni v. Hajus, supra, 180 Conn. 369. Consequently, the plaintiffs allegations, though stemming from a long-term relationship of living together as man and woman, do not fall within the purview of CT Page 12443 General Statutes § 52-572b. Therefore, the defendant's motion to strike all four counts of the plaintiffs complaint based on the prohibitions contained in the Heart Balm statute and the abolition of common law marriage is hereby denied.
The defendant administrator further moves strike the first claim for relief in the plaintiffs complaint which asks for a specific performance transfer of all the property described herein above. The defendant grounds this argument on the Statute of Frauds, General Statutes §52-550, contending that any agreement of transfer between the defendant's decedent and the plaintiff should have been in writing and signed by the party to be charged since it concerns real property.
A well established exception to the rule, however, is imparted by the facts in this case. Full or part performance of an agreement gives rise to equitable considerations removing the oral agreement from the operation of the Statute of Frauds. See, e.g., Breen v. Phelps,186 Conn. 86, 94-96, 439 A.2d 1066 (1982); Deluca v. C.W. Blakeslee Sons. Inc., 174 Conn. 535, 544-45, 391 A.2d 170 (1978); Scribner v.O'Brien. Inc., 169 Conn. 389, 403, 363 A.2d 160 (1975); Strang v.Witkowski, 138 Conn. 94, 99, 82 A.2d 624 (1951); Wolfe v. WallingfordBank Trust Co., 122 Conn. 507, 509-13, 191 A.2d 88 (1937); McNerney v.Blake, 15 Conn. Sup. 446, 447-48, ___ A.2d ___ (1948).
Here, the plaintiffs complaint, in fact the whole story behind the causes of action, center around what services she provided for thirty years. There is no doubt, when analyzing the face of the complaint and construing it in favor of the pleader, that the plaintiffs allegations, upon proving them to be true, constitute part and/or full performance thereby taking the allegations out of the operation of the Statute of Frauds. Accordingly, the corresponding request for relief for specific performance of the property is legally sufficient and proper. Therefore, the defendant's motion to strike the first prayer for relief is hereby denied.
So Ordered.
D'ANDREA, J.