[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The Commissioner of Transportation of the state of Connecticut ("Commissioner") has filed a notice of eminent domain proceedings, which includes a taking by condemnation and assessment of damages, pursuant to General Statutes § 13a-73 (b).[1] The purpose of the taking by eminent domain was to widen Grove Street in the city of Stamford. The taking consisted of a "full and perpetual easement area to construct sidewalk within an area of 266 square feet." The easement area ran along Grove Street for 53 linear feet with a depth of five feet. The property originally contained 7,868 square feet, reduced by the taking to 7,602 square feet. The notice assesses the damages for the taking at $6,450. April 23, 1999 was the taking day.
The property affected by the taking, which is located at 161 Grove Street, consists of two condominium units in each of two buildings, one located behind the other. The unit owners on the date of the taking were Richard C. Harmon, the named plaintiff, and his wife, Stacey Molton Harmon (Unit #1); Nilda Rivera (Unit #2); Ki-Hon Joo and Anne K. Choe (Unit #3); and James E. Staudt (Unit #4). The Orange Grove Condominium Association, Inc., the owner of the common areas, is also a plaintiff. The two buildings were constructed in 1987, and each of the four units has three stories and a wooden deck, with approximately 1, 384 square feet of living space.[2]
The plaintiff's claim to be aggrieved by the Commissioners action, and have filed an application as authorized by General Statutes § 13a-76
for reassessment of the damages.[3] The undersigned conducted a hearing in which testimony was given by the appraisers for each of the parties, exhibits were received, and the court viewed the subject property in the company of both counsel as required by General Statutes § 13a-76.
Some well established principles apply to the taking of property by eminent domain. The fifth amendment to the United States constitution provides that "private property [shall not] be taken for public use, without just compensation." U.S. Const., amend. V. Similarly, article first, § 11, of the Connecticut constitution also provides that CT Page 3658 "[t]he property of no person shall be taken for public use, without just compensation therefor."
Pursuant to General Statutes § 13a-73 (b), in an eminent domain proceeding, the owners of such land shall be paid by the state for all "damages." "The single objective of [an eminent domain] proceeding is to ensure that a property owner shall receive, and that the State shall only be required to pay, the just compensation I which the fundamental law promises the owner for property which the State has seen fit to take for public use." Thomaston v. Ives, 156 Conn. 166, 174, 239 A.2d 515 (1968).
The taking that occurred in this case consisted of a partial taking. "Damages recoverable for a partial taking are ordinarily measured by determining the difference between the market value of the whole tract as it lay before the taking and the market value of what remained of it thereafter, taking into consideration the changes contemplated in the improvement and those which are so possible of occurrence in the future that they may reasonably be held to affect market value." Cappiello v.Commissioner of Transportation, 203 Conn. 675, 679, 525 A.2d 1348
(1987); D'Addario v. Commissioner of Transportation, 180 Conn. 355, 365,429 A.2d 890 (1980).
"Where only a portion of a tract is taken for public use, the award will include the value of the part taken as well as any damages visited upon the remainder as a result of the taking." (Internal citations omitted.) Laurel, Inc. v. Commissioner of Transportation, 180 Conn. 11,37, 428 A.2d 789 (1980). "In determining the market value of the remainder after a partial taking, we have said that it is proper for the trier to consider all elements which are a natural and proximate result of the taking and which could legitimately affect the price a prospective purchaser would pay for the land." (Internal citations omitted.) Bowen v.Ives, 171 Conn. 231, 236, 368 A.2d 82 (1976).
The role of this court in an appeal in an application for reassessment in a condemnation case is more than an arbitrator of differing opinions of witnesses. The court must make an independent determination of value and fair compensation in light of all the circumstances, the evidence, the court's general knowledge and the viewing of the premises. The court's objective is to give a plaintiff, as nearly as possible, a fair equivalent in money as just compensation for the property taken.Feigenbaum v. Waterbury, 20 Conn. App. 148, 153-154, 565 A.2d 5 (1989). Valuation is a matter of fact to be determined by the trier's independent judgment. D'Addario v. Commissioner of Transportation, supra,180 Conn. 369. In determining fair market value, the trier may select the method of valuation most appropriate to the case before it; Laurel, Inc.v. Commissioner of Transportation, supra, 180 Conn. 37-38; and "has the CT Page 3659 right to accept so much of the testimony of the experts and the recognized appraisal methods which they employed as he finds applicable." (Citation omitted.) Pandolphe's v. Auto Parts, Inc. v. Manchester,181 Conn. 217, 221, 435 A.2d 24 (1980).
The plaintiff's appraiser, Andrew E. Altpfort, a certified general real estate appraiser, used the sales comparison method to calculate damages as $15,000 for units #1 and #2, the two units fronting on Grove Street, and $10,000 for each of the two units, #3 and #4, located to the east in the second building. The appraiser arrived at a total of $55,000 reduction in fair market value by adding an additional $5,000 as compensation to the condominium association for the partial loss of the common elements.
This appraiser used the direct sales comparison method and studied sales of three units at the Townhouse, Gatewood and Cambridge Court condominium complexes, all of which are located on Grove Street itself. These sales took place between August, 1998, and December, 1998, for prices ranging between $185,000 and $187,000, and the price per square feet of finished living area for the three sales ranged from $125 to $145. Adjustments were then made based on the date of sale, the location of the unit within the condominium complex, gross living area, fireplace and garage, which resulted in the appraiser's conclusion that the fair market value of the subject unit before the taking was $188,000, which is equivalent to $134 per square foot of living space.
Mr. Altpfort then analyzed the value of the units after the taking by the defendant Commissioner. He noted that both units #3 and #2 were sold after the taking, on April 22, 1999 and July 2, 1999, for $179,100 and $173,000, respectively, and that "the buyers were aware of the road widening at the time of purchase and the sale prices reflect an after taking state." These sales equated to $129 and $125 per square foot, and after an adjustment for a rear location, the appraiser stated that the "after" taking value of units #1 and #2 was $173,000, a loss of $15,000 from the "before" fair market value of those units.[4] Reflecting the appraisers opinion that the two units in the rear building were not affected by the taking to the same degree as units #1 and #2 in the front, Mr. Altpfort, using the same method described previously for units #1 and #2, estimated that the values of both units #3 and #4 were $189,000 before the taking, and $179,000 after the taking, for a net difference of $10,000.
In terms of appraising the "common elements" owned by the condominium association, Mr. Altpfort wrote in his report that "the common elements have been negatively affected by the loss of land" in the amount of $5,000. He arrived at this figure by determining that the fair market CT Page 3660 value of those elements before the taking was $157,000 and $152,000 after the taking. The appraiser analyzed nine sales of unimproved residential land at various locations in Stamford between May, 1997, and November, 1999, and reported that the sales price per square foot of such land varied between $8 and $23. The plaintiffs' appraiser used the figure of $20 a square foot multiplied by the land area before the taking, which resulted in a value of $7,360. The subject parcel, after the taking, contained 7,602 square feet which, at $20 a square foot, resulted in permanent damages of $5,000, the difference between $157,000 and $152,000.
The Commissioner's appraiser, Raymond C. Boucher, also a certified general real estate appraiser, submitted an appraisal report and testified that the damages; visited upon the property owners by the Commissioner's taking for was $6,650. The Commissioner's appraiser valued only the land taken, and found that the taking had' no impact upon the two condominium buildings. "The subject property's dwelling is not impacted by the proposed acquisition and therefore only the subject's land is valued." This appraiser did agree, however, that the property's asphalt driveway, sidewalk, stone curbing, picket fence, wood retaining wall, existing lawn and a trench drain "may be impacted in the future," and he valued these items as worth: $1,843.
This appraiser used three sales in Stamford, on Franklin and West Main Streets, and on Lawn Avenue, occurring between December, 1997 and May, 1999, and, after adjustments, determined that the owner's land was worth $20 a square foot, which resulted in a "before" fair market value of $156,800 per square foot. Mr. Boucher used the same $20 square foot figure for his "after" valuation, but subtracted $6,650, including $4,788 for the value of the land that was taken, and the $1,843 previously mentioned. Therefore, the "before" value was $156,800, and the "after" value was $150,150, a difference of $6,650 as rounded out.
The plaintiffs' appraiser followed our Connecticut law in determining the "before" and "after fair market values of the subject premises. He analyzed three sales of condominium units on the very same street, and his figure of $134 per square foot of living space before the taking appears reasonable. This appraiser, in order to compare this figure with the "after" value, used the subsequent sales of two units within the subject condominium complex to arrive at figures of $129 per square foot for the rear units and $125 for the two front units. This analysis is realistic, whereas the Commissioner's appraisal determined that the taking only affected the land, not the value of the two condominium buildings. Moreover, his comparables were not on Grove Street, as were the comparables used by the plaintiffs' appraiser. CT Page 3661
The rationale for the subject property having a decreased value after the taking reflects the negative impact on the four condominium units of the exercise of the Commissioner's power of eminent domain. This point was aptly summarized by the plaintiffs' appraiser in these words: "As a result of the taking, the subject will be negatively affected by a loss of screening in the front of the site and the decreased setback between the subject unit, a public sidewalk, and Grove Street, a heavily traveled road. In addition, the taking will change the grade of the front of the site which will create a steeper incline between the relocated public sidewalk and the front yard of the complex. The widening of Grove Street creates a negative impact on both the subject unit, and the common area elements in the complex."
However, compensation of $50,000 for the four unit owners is adequate and fair in terms of reflecting the before and after fair market value of the subject premises, and additional compensation of $5,000 for the common elements owned by the association is not warranted. As Mr. Altpford said in connection with the possibility of compensation for the temporary taking during construction, the two sales in the same complex after the taking "reflect the price reductions necessary to induce a transaction." See footnote 4, infra. This same rationale applies to the common elements. Moreover, the condominium association is comprised of the individual unit owners who are already being compensated by a comparison of the before and after values of their respective units.
In terms of the awarding of interest to the plaintiffs, after reviewing all of the testimony and the exhibits in this case, and in light of the amount of compensation paid into court upon the taking by the Commissioner, and considering the ultimate award of this court, the court finds a fair and reasonable rate of interest to be applied to the balance due the owners is six percent (6%). Furthermore, in light of the court's review of the entire file, the court awards a reasonable appraisal fee to the owner in the amount of $3,000, as a further element of just compensation.
Judgment may therefore enter in favor of the owners to recover from the defendant Commissioner $50,000, less $6,450, the amount paid into court by the defendant and withdrawn by the owners on or about December 13, 1999, plus interest on said balance at six percent (6%) per year, an appraisal fee of $3,000, and court costs as taxed by the clerk of this court.
So Ordered.
Dated at Stamford, Connecticut this 28th day of March, 2002. CT Page 3662
______________________________ William B. Lewis, Judge T.R.