******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

## SADIQ MARAFI *v.* HIND EL ACHCHABI ET AL.
## (AC 45745)

Elgo, Suarez and Eveleigh, Js.

*Syllabus*

The defendant appealed to this court from the summary judgment rendered
by the trial court in favor of the plaintiff on his claims of fraudulent
misrepresentation, statutory theft and unjust enrichment. After meeting
in 2001, the parties became involved in a romantic relationship. Despite
this ongoing relationship, the defendant married A in 2007. Later in 2007,
when the plaintiff gave birth to a child, S, she told the plaintiff, who
was present for the birth, that he was S's biological father. She then
filed for divorce from A. In 2009, the defendant had a DNA test done
that conclusively established that A was S's biological father, but she
did not share this result with the plaintiff. After the defendant's marriage
to A was dissolved, she married the plaintiff in 2013. The defendant
then began a romantic relationship with B in 2014. She gave birth to
another child, N, in 2015 and again represented to the plaintiff, who
was present for the birth, that he was the biological father. In 2016, B
submitted to DNA testing, which confirmed that N was his biological
daughter. Between 2007 and 2015, the plaintiff transferred more than
$187 million to the defendant pursuant to the belief that S and N were
his children. Following the dissolution of his marriage to the defendant,
the plaintiff commenced the present action, alleging, inter alia, fraudu-
lent misrepresentation, statutory theft, and unjust enrichment. The
defendant did not file an answer to the complaint but later admitted in
an interrogatory that she knew that A and B were the biological fathers
of her children from the time she was first aware of her pregnancies.
Thereafter, the plaintiff filed a motion for summary judgment; the defen-
dant did not file an objection or appear at the hearing on the motion.
The court rendered judgment for the plaintiff and awarded him damages
of more than $500 million, and the defendant appealed to this court. *Held*:

1. The trial court properly determined that no genuine issue of material fact
   existed with respect to the plaintiff's claims of fraudulent misrepresenta-
   tion, statutory theft, and unjust enrichment:

   a. The trial court properly rendered summary judgment on the count of
   the plaintiff's complaint alleging fraudulent misrepresentation: it was
   undisputed that the defendant had falsely represented to the plaintiff
   that he was the father of both S and N and that the defendant at all
   times knew that those representations were untrue, and the court was
   entitled to rely on the plaintiff's assertions that he would not have made
   financial transfers to the defendant if he had not believed his paternity
   of the children; moreover, the plaintiff's reliance on the defendant's
   representations that S and N were his children was reasonable and

justifiable under the facts of this case, as he was present for the births of both children, he established a trust for their benefit at the defendant's behest, and he spent almost a decade acting as their father under the misapprehension that they were his children; accordingly, the plaintiff established a prima facie case of fraudulent misrepresentation, and the defendant did not respond in any manner to the motion for summary judgment.

b. The trial court properly rendered summary judgment on the count of the plaintiff's complaint alleging statutory theft by false pretenses; this court concluded, for the same reasons and evidentiary basis set forth with respect to the claim of fraudulent misrepresentation, that the trial court properly determined that the plaintiff established a prima facie case of statutory theft, and the defendant did not respond.

c. The trial court properly rendered summary judgment on the count of the plaintiff's complaint alleging unjust enrichment; this court concluded, in light of the evidentiary basis submitted by the plaintiff in support of his motion for summary judgment, that the trial court properly determined that the plaintiff established a prima facie case of unjust enrichment, and the defendant failed to set forth specific facts or evidentiary support to demonstrate that there was a genuine issue for trial.

2. The defendant could not prevail on her claim that the trial court's failure to conclude, sua sponte, that the plaintiff's claims of fraudulent misrepresentation, statutory theft and unjust enrichment were barred by the statute (§ 52-572f) prohibiting any action brought upon any cause arising from "criminal conversation," constituted plain error: when the plaintiff's motion for summary judgment was before the trial court, it was not obvious or indisputable that § 52-572f operated in the particular context of this case, as the plaintiff's operative complaint did not include a criminal conversation count or include the word adultery, but instead was rooted in the defendant's knowingly false representations to the plaintiff that he was the biological father of S and N, and the defendant provided no authority for the proposition that actions for fraudulent misrepresentation, statutory theft or unjust enrichment contravene § 52-572f; moreover, the trial court was entitled to rely on the defendant's affirmative representations in her previously filed motion to transfer the case to the complex litigation docket that this was a fraud case, a pleading that made no mention of adultery or criminal conversation, and which, together with her silence in the face of a motion for summary judgment, further undermined her claim that the court should have sua sponte invoked § 52-572f to bar the plaintiff's claims.

Argued January 25—officially released May 14, 2024

*Procedural History*

Action to recover damages for, inter alia, the named defendant's alleged fraudulent misrepresentation, and

for other relief, brought to the Superior Court in the judicial district of Stamford-Norwalk and transferred to the Complex Litigation Docket, where the court, *Ozalis, J.,* granted the plaintiff's motion for summary judgment and rendered judgment thereon, from which the named defendant appealed to this court. *Affirmed.*

*John R. Weikart,* with whom were *James P. Sexton,* and, on the brief, *Megan L. Wade,* for the appellant (named defendant).

*Jonathan M. Freiman,* with whom was *Emmett F. Gilles,* for the appellee (plaintiff).

*Opinion*

ELGO, J. The defendant Hind El Achchabi[1] appeals from the summary judgment rendered by the trial court in favor of the plaintiff, Sadiq Marafi. On appeal, the defendant claims that the court (1) improperly determined that no genuine issue of material fact existed with respect to the plaintiff's actions for fraudulent misrepresentation, statutory theft, and unjust enrichment, and (2) committed plain error in granting the plaintiff's motion for summary judgment because those actions were predicated on adultery in contravention of General Statutes § 52-572f. We affirm the judgment of the trial court.

Mindful of the procedural posture of this case, we set forth the following facts as gleaned from the pleadings of the parties and the affidavits and other proof submitted by the plaintiff, viewed in the light most

---

[1] Rysaffe Administrators Sarl, in its capacity as trustee of the Achchabi Family Trust; Portchester Limited; Portchester Holdings, LLC; and Ryo, LLC, also were named as defendants in this action. On August 9, 2018, Ryo, LLC, was defaulted for failure to appear pursuant to Practice Book § 17-20. Rysaffe Administrators Sarl, Portchester Limited, and Portchester Holdings, LLC, appeared before the trial court but have not participated in this appeal. We therefore refer to Hind El Achchabi as the defendant in this opinion.

favorable to the defendant.[2] See, e.g., *Martinelli* v. *Fusi*, 290 Conn. 347, 350, 963 A.2d 640 (2009). The plaintiff is a Kuwaiti citizen who has served as Kuwait's Ambassador to Austria and as its Permanent Representative to the United Nations International Organizations in Vienna since September, 2013. The defendant is a citizen of Morocco who maintained residences in Morocco, Austria, and Greenwich, Connecticut.

The parties met in 2001 and subsequently began a romantic relationship. Despite that ongoing relationship, the defendant married Ahmad Al Saad in 2007. The defendant at that time represented to the plaintiff that Al Saad was homosexual, that her relationship with Al Saad was not sexual in nature, and that they married only for family and social reasons for Al Saad's benefit.

When the defendant became pregnant, she told the plaintiff that he was the biological father. Later in 2007, the defendant gave birth to a son, S, at a hospital in New York.[3] The plaintiff was with the defendant at the time of S's birth; Al Saad was neither present for the birth nor in the United States. After being released from the hospital, the plaintiff and the defendant spent time together with S at the Four Seasons Hotel in New York. During that time, the defendant filed for divorce from Al Saad and the parties discussed purchasing a vacation home for their new family.

At the behest of the defendant, the plaintiff thereafter transferred approximately $6.3 million to her to settle the Achchabi Family Trust (trust) for the benefit of their current and future children, which funds were

---

[2] The defendant in this case did not answer the plaintiff's complaint and did not file any responsive pleading to the plaintiff's motion for summary judgment.

[3] On March 1, 2019, the parties filed a joint motion for a protective order to keep certain information confidential, including information concerning the minor children at issue in this case. By order dated March 29, 2019, the court granted that motion.

used to purchase real property known as 31 North Porchuck Road in Greenwich (Greenwich home) in 2009, as well as the subsequent purchase of adjacent property known as 34 North Porchuck Road. Those properties later were conveyed for no consideration to Portchester Holdings, LLC, and were its only assets.[4]

In September, 2009, the defendant covertly had a DNA test performed on S, which conclusively established that Al Saad was the child's father. The defendant informed the plaintiff of that test but falsely stated that its results had confirmed his parentage. In the years that followed, the defendant consistently referred to the plaintiff as S's father in both private and public settings. On one occasion in which the plaintiff expressed a concern as to whether S was his child due to her prior marriage to Al Saad, the defendant angrily admonished him for raising such an issue.

The parties married in Kuwait in 2013. Between 2007 and 2015, the plaintiff transferred more than $187 million to the defendant while under the misapprehension that S was, in fact, his child.

Unbeknownst to the plaintiff, the defendant began a romantic relationship with Mohsine Karim-Bennani in 2014. The defendant became pregnant and again represented to the plaintiff that he was the biological father, though she knew that was false. As the defendant admitted in her June 6, 2019 response to the plaintiff's interrogatories, she "knew the paternity of each of her biological children *from the time she was first aware that she was pregnant* with each of her biological children." (Emphasis added.)

---

[4] Portchester Holdings, LLC, is a Connecticut limited liability company. The sole member of Portchester Holdings, LLC, is Portchester Limited, a Cayman Islands entity. The sole shareholder and director of Portchester Limited is Rysaffe Administrators Sarl, a Swiss entity that at all relevant times served as trustee of the trust.

The defendant gave birth to a daughter, N, at a hospital in New York in 2015. The plaintiff was present at the time of N's birth; Karim-Bennani was not there.[5] Following their release from the hospital, the plaintiff, the defendant, S, and N spent a month together at the Greenwich home and the defendant repeatedly told the plaintiff that he was N's father. The plaintiff believed her and considered N to be his daughter. The plaintiff held a party in Vienna, Austria to celebrate N's birth, which was attended by dignitaries from the Austrian government and the international diplomatic community.

In late 2015, the parties' relationship soured when the plaintiff received reports from personal staff that the defendant was having an affair with Karim-Bennani. Although the defendant initially denied that allegation, in January, 2016, she left the family home in Austria, never to return. The defendant later admitted to the affair with Karim-Bennani and informed the plaintiff that she wanted a divorce.

In April, 2016, the plaintiff filed a complaint in Morocco against the defendant and Karim-Bennani. During the ensuing investigation, Karim-Bennani claimed that N was his biological daughter and submitted to DNA testing, which confirmed his parentage. Following a trial, a Moroccan court found the defendant guilty of intentional fabrication of a document comprising false information, illegally obtaining an administrative document by presenting false information, intentional use of a forgery, and adultery.[6]

---

[5] In support of his motion for summary judgment, the plaintiff submitted a copy of an announcement prepared by the obstetrician who was present for N's birth, which states: "This is an announcement that [the plaintiff] and [the defendant] delivered a baby girl on [redacted] 2015. The baby's weight is 4 [pounds], 4 [ounces]. She was delivered by Dr. Farris Fahmy at Mount Sinai Roosevelt Hospital."

[6] A copy of the November 3, 2016 decision of the Moroccan court was submitted as an exhibit to the plaintiff's motion for summary judgment in the present case.

That same year, Al Saad filed a paternity lawsuit against the defendant in Morocco. After receiving DNA test results confirming that he was the biological father of S, Al Saad sent a copy of the results to the plaintiff in December, 2016. When the plaintiff confronted the defendant with those DNA test results, the defendant finally admitted that S was not his son—nine years after the child's birth. The parties divorced in 2017.

The plaintiff commenced the present action in May, 2018. The defendant filed an appearance on July 12, 2018, and a request to revise on October 15, 2018, which the court denied. On October 19, 2018, the defendant filed an application to transfer the action to the complex litigation docket, in which she averred that "[t]his is a fraud case seeking $100 million in damages, trebled to $300 million." The court granted that motion on November 8, 2018. The defendant thereafter filed a series of requests to revise and multiple objections to the plaintiff's interrogatories and requests for production.

On June 14, 2019, the plaintiff filed the operative complaint, his second amended complaint, which contained five counts. Counts one through four were directed solely at the defendant and alleged fraudulent misrepresentation, statutory theft, intentional infliction of emotional distress, and negligent infliction of emotional distress. In count five, the plaintiff alleged unjust enrichment against the defendant and other entities. See footnote 1 of this opinion. At no time did the defendant file an answer to any of the complaints filed by the plaintiff, including the operative one.

On July 16, 2019, the law firm representing the defendant filed a motion to withdraw its appearance for cause, which the court granted on August 16, 2019.[7]

_____

[7] In its order, the court found that the law firm had "demonstrated good cause by establishing that [the defendant] has failed to pay substantial sums due and owing on the firm's invoices for legal services in connection with this matter, some outstanding for more than [one] year. . . . Given the significant amount of money due and owing, the court finds that it would be unreasonable to require [the law firm] to continue to finance this litigation."

At that time, the defendant's participation in this case before the Superior Court ceased.[8]

On December 13, 2019—more than eighteen months after the action commenced—the plaintiff filed a motion for summary judgment on counts one, two and five of the operative complaint. That motion was accompanied by a memorandum of law and fifty exhibits, which included affidavits from the plaintiff and Attorney Richard Luedeman, bank records documenting millions of dollars in payments to the defendant by the plaintiff, invoices for large expenditures made by the defendant including a yacht, multiple aircraft, and approximately $3.5 million in jewelry, copies of text messages and WhatsApp[9] chats between the parties, and numerous photographs of the plaintiff with the defendant, S, and N. The defendant did not file an objection to the plaintiff's motion for summary judgment.[10]

The court held a hearing on the motion for summary judgment on February 27, 2020. When the defendant did not appear, the court ordered the plaintiff to serve the motion on the defendant by supplemental service. On June 4, 2020, the plaintiff filed a certification of supplemental service, indicating that service was made

[8] On August 16, 2019, the trial court sua sponte ordered a sixty day stay of "all proceedings" in the case "to give the defendant reasonable time to obtain new counsel and to protect her interests in the meantime." Those sixty days passed without the defendant filing an appearance or communicating in any way with the court.

[9] "WhatsApp is a messaging service that uses an [I]nternet connection, instead of a cellular network connection, to send text messages and photographs between cell phones." *Klein* v. *Facebook, Inc.*, 580 F. Supp. 3d 743, 810 (N.D. Cal. 2022).

[10] On January 27, 2020, Rysaffe Administrators Sarl, Portchester Limited, and Portchester Holdings, LLC, filed what they termed a "response" to the plaintiff's motion for summary judgment, in which they maintained that they did not participate in the fraud that allegedly resulted in the transfer of substantial sums to the defendant and that they "take no position with respect to the fraud, theft, and unjust enrichment allegedly committed by [the defendant]."

on the defendant's attorneys in Switzerland and France, on the defendant's sister in Japan, and on an additional address for the defendant in Rabat, Morocco.

Oral argument on the motion for summary judgment commenced on September 25, 2020. At that time, the court remarked that the plaintiff "certainly makes a persuasive argument for summary judgment on the liability for the claims of [statutory] theft, unjust enrichment and [fraudulent] misrepresentation. So I don't need . . . further argument on that. . . . What is unclear to me is the amount of [money that] was transferred" from the plaintiff to the defendant. Following a colloquy with the plaintiff's counsel, the court invited the plaintiff to submit a supplemental filing in support of the motion for summary judgment. In response, the plaintiff filed a supplemental brief on October 30, 2020, in which he averred that he had made wire transfers and cash remittances to the defendant totaling $187,888,949.28 from 2007 to 2014. That brief was accompanied by the sworn affidavit of Attorney Laura Ann K. Froning. Over the course of 367 paragraphs, that affidavit painstakingly detailed in chronological order numerous transfers from the plaintiff's account with the National Bank of Kuwait to (1) the defendant's account with the Banque Marocaine du Commerce Extérieur in Morocco and (2) the defendant's account with the National Bank of Kuwait in various currencies, including Swiss francs, United States dollars, euros, and Kuwaiti dinar. Appended to that affidavit were thirty-nine exhibits, all of which were bank records documenting the transfers referenced in Froning's affidavit.

On November 2, 2020, the court granted the plaintiff's motion for summary judgment. In its memorandum of decision, the court found that no genuine issue of material fact existed with respect to the defendant's liability

on counts one, two, and five of the operative com-
plaint.[11] The court thereafter entered an order awarding
the plaintiff $192,111,387.20 on the fraudulent misrepre-
sentation count, trebled damages pursuant to General
Statutes § 52-564 on the statutory theft count that
totaled $576,335,551.60, and $6,250,000 on the unjust
enrichment count with respect to the defendant.[12] The
court rendered judgment accordingly, and this appeal
followed.

As a preliminary matter, we note the well established
standard that governs our review of the trial court's
decision to grant a motion for summary judgment. "The
facts at issue are those alleged in the pleadings." (Inter-
nal quotation marks omitted.) *Parnoff* v. *Aquarion
Water Co. of Connecticut*, 188 Conn. App. 153, 164, 204
A.3d 717 (2019). "Practice Book § 17-49 provides that
summary judgment shall be rendered forthwith if the
pleadings, affidavits and any other proof submitted
show that there is no genuine issue as to any material
fact and that the moving party is entitled to judgment
as a matter of law. In deciding a motion for summary
judgment, the trial court must view the evidence in the
light most favorable to the nonmoving party. . . . [T]he
moving party . . . has the burden of showing the
absence of any genuine issue as to all the material facts
. . . . Once the moving party has met its burden . . .
the [nonmoving] party must present evidence that dem-
onstrates the existence of some disputed factual issue.
. . . Our review of the trial court's decision to grant the

[11] The plaintiff subsequently withdrew counts three and four of his com-
plaint, which alleged intentional and negligent infliction of emotional dis-
tress.

[12] The court also rendered summary judgment against Rysaffe Administra-
tors Sarl, Portchester Limited, and Portchester Holdings, LLC, on the unjust
enrichment count and ordered them to "disgorge the assets of the trust to
the plaintiff no later than thirty days after this court's decision . . . ." It is
undisputed that those entities complied with that order, as evidenced by
the notice of compliance filed with the court on December 11, 2020.

defendant's motion for summary judgment is plenary." (Citations omitted; internal quotation marks omitted.) *Lucenti* v. *Laviero*, 327 Conn. 764, 772–73, 176 A.3d 1 (2018).

I

On appeal, the defendant claims that the court improperly determined that no genuine issue of material fact existed with respect to the plaintiff's actions for fraudulent misrepresentation, statutory theft, and unjust enrichment. We disagree.

A

We begin with the first count of the operative complaint, which alleged fraudulent misrepresentation on the part of the defendant. Fraudulent misrepresentation "is an intentional tort"; *Kramer* v. *Petisi*, 285 Conn. 674, 684, 940 A.2d 800 (2008); that "has four elements: (1) a false representation was made by the defendant as a statement of fact; (2) the statement was known to be untrue by the defendant; (3) the statement was made with the intent to induce reliance; and (4) the other party relied on the statement to its detriment."[13] *Companions & Homemakers, Inc.* v. *A&B Homecare Solutions, LLC*, 348 Conn. 132, 144, 302 A.3d 283 (2023).

---

[13] In this appeal, the parties disagree as to whether the fourth element requires proof that a plaintiff's reliance was reasonable. See *Companions & Homemakers, Inc.* v. *A&B Homecare Solutions, LLC*, 348 Conn. 132, 144 n.4, 302 A.3d 283 (2023) ("[a]lthough there are circumstances in which the plaintiff's reliance must be reasonable for the false representation to be actionable, we do not address this issue"); *Stuart* v. *Freiberg*, 316 Conn. 809, 829 n.15, 116 A.3d 1195 (2015) (noting that reasonable reliance is essential element of *negligent* misrepresentation); *Goldstein* v. *Unilever*, Superior Court, judicial district of Fairfield, Docket No. CV-397881-S (May 3, 2004) (37 Conn. L. Rptr. 158, 164 n.9) (emphasizing that "[t]he Restatement formulation of the law of fraud, which has never been adopted by a Connecticut appellate court, does require that reliance on a fraudulent misrepresentation be 'justifiable' "). For purposes of the present analysis, we assume without deciding that proof of reasonable reliance is required.

It is undisputed that the defendant falsely represented to the plaintiff that he was the father of both S and N. The defendant at all times knew that those representations were untrue. As the defendant admitted in her response to the plaintiff's interrogatories, she "knew the paternity of each of her biological children *from the time she was first aware that she was pregnant* with each of her biological children." (Emphasis added.) The first two elements of fraudulent misrepresentation, therefore, are plainly established.

The plaintiff filed various materials in support of the motion for summary judgment, including his December 10, 2019 affidavit. As this court has observed, "when a nonmoving party fails to respond to a motion for summary judgment by setting forth specific facts showing that there is a genuine issue for trial, the court is entitled to rely upon the facts alleged in the affidavit of the moving party." *Carrasquillo* v. *Carlson*, 90 Conn. App. 705, 711, 880 A.2d 904 (2005); see also *Bartha* v. *Waterbury House Wrecking Co.*, 190 Conn. 8, 11–12, 459 A.2d 115 (1983) (court is entitled to rely on facts stated in movant's affidavit when nonmovant does not respond). In the present case, the defendant never responded to the plaintiff's motion for summary judgment. Accordingly, the court was entitled to rely on the facts set forth in the plaintiff's December 10, 2019 affidavit.

In that affidavit, the plaintiff stated that he believed that S was his son and that N was his daughter due to the defendant's representations that he was their biological father. He indicated that he was with the defendant at the times that she gave birth to both S and N and that, over the years that followed, he relied on the defendant's repeated assurances and representations regarding his parentage. On the one occasion in 2013 in which he expressed a concern as to whether S was his child due to her prior marriage to Al Saad, the

plaintiff stated that the defendant angrily admonished him "for even having asked the question."

In text messages with the defendant, copies of which were submitted in support of the motion for summary judgment, the plaintiff referred to S as his "beloved" child who he nicknamed "President" and referred to N as his "Princess." Other materials submitted by the plaintiff, such as the written communications to S's boarding school and the invitations sent to international dignitaries to attend a celebration to welcome his "newborn baby girl" in 2015, demonstrate that the plaintiff held S and N out to the world as his children. The plaintiff also submitted several photographs in support of his motion for summary judgment, many of which feature him smiling with his arms around S and N.

The plaintiff further averred in his affidavit that he had transferred "tens of millions of dollars" to the defendant "because I believed that [the defendant] had been honest with me and that S was my son and N my daughter. Had I not believed that, I would not have made those transfers. My financial relationship with [the defendant] was entirely predicated upon the family relationships that she fraudulently claimed." In addition, the plaintiff produced a panoply of financial records that, along with the affidavits of Froning and Luedeman, documented in detail more than $187 million in transfers from the plaintiff to the defendant between 2007 and 2014.

In light of those materials, we conclude that the court properly determined that the plaintiff established a prima facie case of fraudulent misrepresentation. The facts set forth therein indicate both that the defendant's knowingly false representations to the plaintiff regarding his parentage of S and N were made with the intent to induce reliance and that the plaintiff relied on those representations to his detriment. We further conclude

that the plaintiff's reliance was reasonable and justifiable under the facts and circumstances of this case, in which he was present for the births of both children, established a trust for their benefit at the defendant's behest, and thereafter spent almost one decade acting as a father under the misapprehension that S, and later N, were his children.[14]

Because the plaintiff established a prima facie case of fraudulent misrepresentation, it was incumbent on the defendant to "substantiate [her] adverse claim by showing that there is a genuine issue of material fact *together with the evidence disclosing the existence of such an issue.*" (Emphasis in original; internal quotation marks omitted.) *Rainbow Housing Corp.* v. *Cromwell*, 340 Conn. 501, 522, 264 A.3d 532 (2021); see also *Romprey* v. *Safeco Ins. Co. of America*, 310 Conn. 304,

[14] In her principal appellate brief, the defendant suggests that the fourth element of a fraudulent misrepresentation claim requires proof that the detriment sustained by a plaintiff was caused "only" and exclusively by reliance on the defendant's false statement. She has provided no legal authority for that proposition, nor are we aware of any. Under Connecticut law, a plaintiff asserting a claim for fraudulent misrepresentation bears the burden of demonstrating that he relied on a defendant's knowingly false statement and that he "suffered harm as a result of the reliance." (Internal quotation marks omitted.) *Sturm* v. *Harb Development, LLC*, 298 Conn. 124, 142, 2 A.3d 859 (2010). Moreover, the Restatement (Third) of Torts rejects the proposition urged by the defendant. As it explains: "A successful claim for fraud requires proof that the plaintiff relied on the defendant's misrepresentation. The element of reliance overlaps with (and may be considered a form of) the usual requirement in tort that a defendant's wrong be a factual or 'but for' cause of the harm that the plaintiff suffered. The plaintiff may have been influenced by several sources, or by multiple statements—some true, some false—made by the same party. Liability is nevertheless intact if the defendant's fraud made a necessary contribution to the plaintiff's loss, typically by inducing the plaintiff to enter a damaging transaction. *If the plaintiff was subject to multiple influences, each of which would have been sufficient to cause the resulting loss, the defendant whose fraud was among those influences may be held liable even though it may appear that the fraud was not a 'but for' cause of the harm.*" (Emphasis added.) 1 Restatement (Third), Torts, Liability for Economic Harm § 11, comment (a), p. 95 (2020).

320–21, 77 A.3d 726 (2013) ("the rule that the party opposing summary judgment must provide evidentiary support for its opposition applies only when the moving party has first made out a prima facie case for summary judgment"); *Farrell* v. *Farrell*, 182 Conn. 34, 38, 438 A.2d 415 (1980) ("[w]hen a motion for summary judgment . . . is filed and supported by affidavits and other documents, [the nonmoving] party . . . must set forth specific facts showing that there is a genuine issue for trial, and if he does not so respond, summary judgment shall be entered against him" (footnote omitted)). That she failed to do. Because the plaintiff established a prima facie case of fraudulent misrepresentation and the defendant did not respond in any manner to the motion for summary judgment, the court properly rendered summary judgment on count one of the complaint.

B

We turn next to the second count of the complaint, which alleged statutory theft by false pretenses in violation of § 52-564. "[S]tatutory theft under . . . § 52-564 is synonymous with larceny [as defined in] General Statutes § 53a-119 [and] includes various fraudulent methods of taking property from its owner, including when a person obtains property by false pretenses." (Citation omitted; internal quotation marks omitted.) *Scholz* v. *Epstein*, 341 Conn. 1, 18–19, 266 A.3d 127 (2021). A conviction for larceny by false pretenses requires proof "(1) that a false representation or statement of a past or existing fact was made by the accused; (2) that in making the representation he knew of its falsity; (3) that the accused intended to defraud or deceive; (4) that the party to whom the representation was made was in fact induced thereby to act to her injury; and (5) that the false representation or statement was the effective cause of the accused receiving something of value without compensation." *State* v. *Farrah*,

161 Conn. 43, 47, 282 A.2d 879 (1971). Both parties acknowledge that the elements of a false pretenses claim largely mirror those constituting a claim of fraudulent misrepresentation.

For the same reasons and evidentiary basis outlined in part I A of this opinion, we conclude that the court properly determined that the plaintiff established a prima facie case of statutory theft by false pretenses, to which the defendant did not respond. Summary judgment, therefore, was properly granted on the second count of the operative complaint.

C

The third and final cause of action at issue is unjust enrichment. "[R]ecovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." (Internal quotation marks omitted.) *Gagne* v. *Vaccaro*, 255 Conn. 390, 408, 766 A.2d 416 (2001). As our Supreme Court has explained, "[u]njust enrichment is, consistent with the principles of equity, a broad and flexible remedy . . . . Plaintiffs seeking recovery . . . must prove (1) that the defendants were benefited, (2) that the defendants unjustly did not pay the plaintiffs for the benefits, and (3) that the failure of payment was to the plaintiffs' detriment." (Internal quotation marks omitted.) *Geriatrics, Inc.* v. *McGee*, 332 Conn. 1, 24–25, 208 A.3d 1197 (2019).

In light of the evidentiary basis submitted by the plaintiff in support of the motion for summary judgment, as discussed in part I A of this opinion, we conclude that the plaintiff established a prima facie case of unjust enrichment. With no response from the defendant setting forth specific facts or evidentiary support to demonstrate that there was a genuine issue for trial;

see *Romprey* v. *Safeco Ins. Co. of America*, supra, 310 Conn. 320–21; *Farrell* v. *Farrell*, supra, 182 Conn. 38; the court properly granted summary judgment on count five of the complaint.

## II

The defendant also contends that the court improperly rendered judgment in favor of the plaintiff as a matter of law on the fraudulent misrepresentation, statutory theft, and unjust enrichment counts of his complaint. She claims that those counts all were predicated on her adultery and, thus, are barred by § 52-572f.

The defendant concedes that she did not raise that claim at any time before the trial court and now seeks to prevail pursuant to the plain error doctrine. She maintains that the court committed plain error by rendering summary judgment "on legislatively abolished claims arising from the defendant's alleged adultery." We do not agree.

"[T]he plain error doctrine . . . is not . . . a rule of reviewability. It is a rule of reversibility. That is, it is a doctrine that this court invokes in order to rectify a trial court ruling that, although either not properly preserved or never raised at all in the trial court, nonetheless requires reversal of the trial court's judgment . . . for reasons of policy. . . . [P]lain error review is reserved for only the most egregious errors. When an error of such a magnitude exists, it necessitates reversal." (Citation omitted; internal quotation marks omitted.) *State* v. *McClain*, 324 Conn. 802, 813–14, 155 A.3d 209 (2017). "An appellate court addressing a claim of plain error first must determine if the error is indeed plain in the sense that it is patent [or] readily [discernible] on the face of a factually adequate record, [and] also . . . obvious in the sense of not debatable. . . . This determination clearly requires a review of the plain error claim presented in light of the record. Although

a complete record and an obvious error are prerequisites for plain error review, they are not, of themselves, sufficient for its application. . . . [T]he plain error doctrine is reserved for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings. . . . [I]n addition to examining the patent nature of the error, the reviewing court must examine that error for the grievousness of its consequences in order to determine whether reversal under the plain error doctrine is appropriate. A party cannot prevail under plain error unless it has demonstrated that the failure to grant relief will result in manifest injustice. . . . [An appellant] cannot prevail under [the plain error doctrine] . . . unless he demonstrates that the claimed error is *both* so clear *and* so harmful that a failure to reverse the judgment would result in manifest injustice." (Citations omitted; emphasis in original; internal quotation marks omitted.) Id., 812.

On appeal, the defendant claims that the trial court should have sua sponte concluded that the plaintiff's actions for fraudulent misrepresentation, statutory theft, and unjust enrichment were barred by § 52-572f, and that its failure to do so constitutes plain error. Section 52-572f provides: "No action may be brought upon any cause arising from criminal conversation." Historically, criminal conversation was a common-law action synonymous with adultery. See, e.g., *Tinker* v. *Colwell*, 193 U.S. 473, 481, 24 S. Ct. 505, 48 L. Ed. 754 (1904) (quoting William Blackstone for proposition that criminal conversation is cause of action for "[a]dultery . . . with a man's wife" (internal quotation marks omitted)); *Marri* v. *Stamford Street Railroad Co.*, 84 Conn. 9, 14, 78 A. 582 (1911) (same); *Oppenheim* v. *Kridel*, 236 N.Y. 156, 166, 140 N.E. 227 (1923) (explaining that "adultery is the sole basis" of action for criminal conversation); *State ex rel. Golden* v. *Kaufman*, 236 W. Va.

635, 645, 760 S.E.2d 883 (2014) ("criminal conversation is, quite simply, adultery; they are one and the same"); cf. 14 Sen. Proc., Pt. 4, 1971 Sess., p. 1516, remarks of Senator J. Edward Caldwell ("[§ 52-572f] merely abolishes an ancient action on the books"). The plain intent of the legislature in enacting § 52-572f was to prohibit civil actions in this state for adultery.

The operative complaint in the present case does not include a criminal conversation count, nor does it include the word adultery. The three counts at issue in this appeal—fraudulent misrepresentation, statutory theft, and unjust enrichment—all are rooted in the defendant's knowingly false representations to the plaintiff that he was the biological father of S and N. The defendant nevertheless insists that those causes of action contravene the proscription of § 52-572f and argues that the trial court, in not enforcing that proscription, committed an error that was obvious and not debatable.

We cannot agree with that proposition. The defendant has provided no authority in which a Connecticut court has held that actions for fraudulent misrepresentation, statutory theft, or unjust enrichment contravene § 52-572f. Moreover, the defendant mistakenly suggests that this is a question of first impression in this state. She overlooks the fact that, in *DiMichele* v. *Perrella*, Superior Court, judicial district of Waterbury, Docket No. CV-10-6004536-S (February 23, 2011) (51 Conn. L. Rptr. 750), rev'd on other grounds, 158 Conn. App. 726, 120 A.3d 551, cert. denied, 319 Conn. 927, 125 A.3d 203 (2015), the Superior Court was presented with a strikingly similar claim to that now raised by the defendant. Like the present case, *DiMichele* involved a plaintiff from whom the true paternity of two children he believed to be his own was concealed "for nearly a decade." Id., 750. That plaintiff subsequently brought an action against the defendant biological father of the

children alleging, inter alia, fraud. In moving to strike that count, the defendant argued that § 52-572f precluded that action. Id., 757. The court rejected that contention and concluded that the plaintiff's action for fraud was "not barred by the legislature's abolition of the doctrine of criminal conversation as embodied in [§] 52-572f." Id., 759; accord *Dufault* v. *Mastrocola*, Superior Court, judicial district of Hartford-New Britain, Docket No. CV-94-0543343-S (March 1, 1996) (denying motion to strike predicated on § 52-572f regarding common-law causes of action including negligence, intentional infliction of emotional distress, breach of fiduciary duty, and breach of contract arising from defendant's sexual relations with plaintiff's wife).

The Superior Court's conclusions in *DiMichele* and *Dufault* comport with the reasoning of our Supreme Court in *Piccininni* v. *Hajus*, 180 Conn. 369, 429 A.2d 886 (1980). The plaintiff in that case brought an action for fraudulent misrepresentation, alleging that the defendant had fraudulently represented to him "that she would marry him and that they would occupy, as their home, the house owned by the defendant [and that] the plaintiff was induced to spend approximately $40,000 in renovating, improving and furnishing [her] house." Id., 370. In response, the defendant filed a motion to strike that count, claiming that it was barred by General Statutes § 52-572b;[15] the trial court agreed and granted that motion. Id.

On appeal, the Supreme Court disagreed with that determination. It first explained that "Heart Balm *statutes* should be applied no further than to bar actions for damages suffered from loss of marriage, humiliation, and other direct consequences of the breach, *and*

---

[15] General Statutes § 52-572b provides: "No action may be brought upon any cause arising from alienation of affections or from breach of a promise to marry."

*should not affect the rights and duties determinable by common law principles.*" (Emphasis added.) Id., 372. The court then applied that precept to the facts of the case, stating: "The plaintiff here is not asking for damages because of a broken heart or a mortified spirit. He is asking for the return of things which he bestowed in reliance upon the defendant's fraudulent representations. [Section 52-572b] does not preclude an action for restitution of specific property or money transferred in reliance on various false and fraudulent representation, apart from any promise to marry, as to their intended use. . . . [T]he gravamen of the [plaintiff's claim] is that [he] was induced to transfer property to the defendant in reliance upon her fraudulent representations that she intended to marry him and that the property transferred would be used for their mutual benefit and enjoyment. The plaintiff does not here assert that the defendant wronged him in failing to marry him; rather, he is asserting that the defendant wronged him in fraudulently inducing him to transfer property to her. The plaintiff's complaint is based on what the defendant did, and not on what she refused to do." (Citation omitted.) Id., 373–74. For that reason, the court concluded that the motion to strike was improperly granted. Id., 374.

The defendant claims that *Piccininni* has little relevance to the present case, as it involved only § 52-572b. We disagree. Early in its decision in *Piccininni*, our Supreme Court made clear that all references therein to § 52-572b would be to "the Act"; id., 370; and the court employed that particular diction whenever it discussed § 52-572b specifically. See id., 373. At the same time, the court also referred to "Heart Balm Acts" and "Heart Balm statutes" in its discussion of general principles gleaned from other jurisdictions; see id., 371–72; and it cited to cases that note that criminal conversation is

among the heart balm statutes.[16] See id., 372, citing *In re Marriage of Heinzman*, 40 Colo. App. 262, 265, 579 P.2d 638 (1978), aff'd, 198 Colo. 36, 596 P.2d 61 (1979), and *Gill* v. *Shively*, 320 So. 2d 415, 417 (Fla. App. 1975). In our view, *Piccininni* is highly relevant to any discussion of heart balm statutes such as §§ 52-572b and 52-572f, as multiple Superior Court judges have held. See, e.g., *Caldarella* v. *Steigbigel*, Superior Court, judicial district of New Haven, Docket No. CV-13-6035423-S (August 14, 2013); *DiMichele* v. *Perrella*, supra, Superior Court, Docket No. CV-10-6004536-S; *Dufault* v. *Mastrocola*, supra, Superior Court, Docket No. CV-94-0543343-S. That authority strongly suggests, contrary to the contention of the defendant, that actions for fraudulent misrepresentation, statutory theft, and unjust enrichment are not barred by § 52-572f in cases in which a plaintiff seeks restitution for moneys transferred in reliance on the defendant's fraudulent representations, as alleged in the operative complaint here, rather than damages stemming from "a broken heart or a mortified spirit."[17] *Piccininni* v. *Hajus*, supra, 180 Conn. 373.

---

[16] As numerous jurisdictions have observed, criminal conversation is considered a heart balm action. See, e.g., *Tran* v. *Nguyen*, 97 Cal. App. 5th 523, 533, 315 Cal. Rptr. 3d 607 (2023); *Diaz* v. *Eli Lilly & Co.*, 364 Mass. 153, 160, 302 N.E.2d 555 (1973); *G.A.W., III* v. *D.M.W.*, 596 N.W.2d 284, 289 (Minn. App. 1999); *Saunders* v. *Alford*, 607 So. 2d 1214, 1215 (Miss. 1992); *Segal* v. *Lynch*, 413 N.J. Super. 171, 182, 993 A.2d 1229 (App. Div.), cert. denied, 203 N.J. 96, 999 A.2d 464 (2010); *Laidlaw* v. *Converge Midatlantic*, 66 Pa. D. & C. 5th 358 (2017); *Campbell* v. *Robinson*, 398 S.C. 12, 18, 726 S.E.2d 221 (2012); *Felsenthal* v. *McMillan*, 493 S.W.2d 729, 730 (Tex. 1973); *Koestler* v. *Pollard*, 162 Wis. 2d 797, 802, 471 N.W.2d 7 (1991); cf. *Brown* v. *Strum*, 350 F. Supp. 2d 346, 348–49 (D. Conn. 2004) (criminal conversation is common-law heart balm action under Connecticut and New York law); W. Keeton et al., Prosser and Keeton on the Law of Torts (5th Ed. 1984) § 124, p. 929 (discussing actions for alienation of affection, seduction, and criminal conversation and noting that compensation for such actions "has derisively been called 'heart balm' "). In her principal appellate brief, the defendant acknowledges that "other jurisdictions . . . have abolished criminal conversation and other 'heart balm' actions . . . ."

[17] In our view, the lesson of *Piccininni* is that a plaintiff may state a legally viable claim for fraudulent misrepresentation and recover restitution, even in factual scenarios that appear to implicate heart balm statutes such

In addition, it is well established that the courts of this state are entitled to rely on representations made by the parties before it. See *State* v. *Pires*, 310 Conn. 222, 238, 77 A.3d 87 (2013) ("the trial court may rely on factual and legal representations by counsel to the court, which are then attributable to and binding on the attorney's client"). On October 19, 2018, the defendant filed an application to transfer the present action to the complex litigation docket, in which she averred that "[t]his is a fraud case seeking $100 million in damages, trebled to $300 million. [The plaintiff] alleges that [the defendant] made false representations to him regarding the paternity of her son and one of her daughters . . . and that, in reliance on those allegedly false statements, he made transfers to her totaling at least $100 million over the course of a decade." In that pleading, the defendant made no mention of adultery, criminal conversation or the like. Rather, she represented to the court that this was "a fraud case" that concerned false representations made to the plaintiff regarding his paternity of her children. Under Connecticut law, we presume that the trial court was aware of the contents of that pleading. See, e.g., *Brookfield* v. *Candlewood Shores Estates, Inc.*, 201 Conn. 1, 4–6, 513 A.2d 1218 (1986) (appellate court presumes that trial court considered pleadings in file before it); *A. Secondino & Son, Inc.* v. *LoRicco*, 19 Conn. App. 8, 13, 561 A.2d 142 (1989)

---

as §§ 52-572b and 52-572f. Other jurisdictions have reached such a result. See, e.g., *G.A.W., III* v. *D.M.W.*, 596 N.W.2d 284, 289 (Minn. App. 1999) (plaintiff's claims for fraud based on misrepresented paternity were not barred by legislature's abolition of criminal conversation); *Hodge* v. *Craig*, 382 S.W.3d 325, 342 (Tenn. 2012) (concluding that "public policy does not prevent the former spouse of a child's mother from pursuing a common-law damage claim based on her misrepresentations regarding the identity of the child's biological father"); cf. *Tran* v. *Nguyen*, 97 Cal. App. 5th 523, 525–26, 315 Cal. Rptr. 3d 607 (2023) (concluding that plaintiff's attempt to recover extortion payments made to defendant to prevent disclosure of parentage over his "child birthed by another woman during his marriage" did not violate heart balm statute prohibiting actions for criminal conversation).

("we will presume that the trial court was aware of the contents of the [case] file"). The defendant's affirmative representation that this is a fraud case premised on her false representations regarding the plaintiff's paternity—and her subsequent silence in the face of a motion for summary judgment—further undermines her claim that the court should have sua sponte invoked § 52-572f to bar the plaintiff's claims.

To be clear, the issue before us is not whether § 52-572f operates to bar actions for fraudulent misrepresentation, statutory theft, and unjust enrichment. The issue is whether the defendant has sustained her burden of establishing that, when the plaintiff's motion for summary judgment was before the trial court, it was obvious and indisputable that § 52-572f so operates in the particular context of this case. In this regard, we are mindful that "[p]lain error is a doctrine that should be invoked sparingly." (Internal quotation marks omitted.) *State* v. *Jamison*, 320 Conn. 589, 596, 134 A.3d 560 (2016). The defendant's burden under the first prong of that doctrine is to demonstrate the existence of an error that is "obvious in the sense of not debatable. . . . [T]his inquiry entails a relatively high standard, under which it is not enough for the defendant simply to demonstrate that [her] position is correct. Rather, the party seeking plain error review must demonstrate that the claimed impropriety was so clear, obvious and indisputable as to warrant the extraordinary remedy of reversal." (Internal quotation marks omitted.) *State* v. *Coccomo*, 302 Conn. 664, 685, 31 A.3d 1012 (2011). Our Supreme Court has succinctly described the first prong as requiring proof of "an error so obvious on its face that it is undebatable." *State* v. *McClain*, supra, 324 Conn. 820 n.13. On the record before us, we conclude that the defendant has not met that burden.

The judgment is affirmed.

In this decision the other judges concurred.